González, Demandante y Apelante, *v.* Roig et al.,
Demandados y Apelados.

Apelación procedente de la Corte de Distrito de Humacao
en pleito sobre nulidad y otros extremos.

No. 2631.—Resuelto en julio 18, 1922.

Autorización para Vender Bienes de Menores—Necesidad y Utilidad—Intervención del Fiscal.—En un expediente de necesidad y utilidad para obtener autorización judicial para la enajenación de bienes de menores, tramitado en febrero de 1911, no es necesaria la intervención del fiscal. *Busó et al. v. Busó et al.,* 19 D. P. R. 9.

Id.—Affidavits como Prueba—Nulidad.—Las cortes no deben aceptar *affidavits* como prueba en los expedientes de necesidad y utilidad. Eso no obstante, estudiadas las circunstancias concurrentes en este caso, en ausencia absoluta no ya de fraude, sino de la más leve injusticia, se decidió que no procedía declarar nulo el expediente por el solo hecho de haberse admitido como prueba declaraciones de testigos en forma de *affidavits.*

Id.—Excepción Previa—Juez Sucesor.—El hecho de que un juez haya resuelto una excepción previa, no impide a su sucesor decidirla en sentido contrario si de nuevo debidamente se suscita, o si está obligado a pasar por sus méritos al dictar su sentencia.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. F. Cervoni.*

Abogados de los apelados: *Sres. F. González y Chas. Hartzell.*

El Juez Presidente Sr. del Toro, emitió la opinión del tribunal.

Antonia González Cádiz demandó a Antonio Roig y a la Juncos Central Company en solicitud de la nulidad de cierta autorización judicial, la cancelación de determinadas inscripciones en el registro, la entrega de un terreno y el pago de una indemnización de diez mil dólares. La demanda fué declarada sin lugar y la demandante apeló para ante esta Corte Suprema.

De las alegaciones y de las pruebas resulta que el 18 de febrero de 1911, Josefa González, madre con patria potestad sobre su hija menor no emancipada la actual demandante, vecina de Humacao, presentó una solicitud jurada en la Corte

de Distrito de Humacao alegando que su hija era dueña de una finca de veintiséis cuerdas situada en la jurisdicción municipal de Humacao que le fué adjudicada en la testamentaría de su padre en la suma de quinientos cincuenta dólares; que la finca estaba arrendada por cien dólares al año; que Antonio Roig le había ofrecido comprar una cuerda de terreno de dicha finca para instalar una vía férrea, pagando por ella quinientos dólares; que el establecimiento de la vía daría más valor a la finca; que en nada se disminuía el precio del arrendamiento por la segregación de la cuerda, y que el producto de la venta se emplearía en una finca urbana que rentaría ocho dólares al mes, por todo lo cual solicitaba la autorización de la corte para segregar y vender la expresada porción de terreno por el precio de quinientos dólares.

Se presentaron como prueba tres *affidavits* que contienen las manifestaciones de Julio Gay, Francisco Porrata y Anfros García, todos en corroboración de lo consignado en la solicitud jurada y una certificación del Tesorero creditiva de que la finca de veintiséis cuerdas estaba valorada en $1,930 a los efectos contributivos.

La corte finalmente por una resolución fundada, concedió la autorización, y la venta se realizó por escritura pública otorgada el 21 de febrero de 1911. El comprador Roig vendió luego la parcela a la Juncos Central Company que la posee en la actualidad. Ambas adquisiciones se inscribieron sin dificultad en el registro.

Sostiene la parte demandante que la autorización concedida es nula porque lo fué sin haberse oído al fiscal y sin practicarse prueba.

1. La ley vigente sobre la materia en la época de la autorización está contenida en el artículo 222 del Código Civil Revisado y en los artículos 80, 81 y 82 de la Ley de Procedimientos Legales Especiales de 1905. Y en ninguno de dichos preceptos legales se exige la intervención del fiscal.

Esta misma cuestión fué resuelta por este tribunal en el

caso de *Busó et al.* v. *Busó et al.,* 19 D. P. R. 9, 15.  La corte,
por medio del Juez Asociado Sr. MacLeary, se expresó así:

"La ley vigente en la fecha en que fué dictada la orden sobre
el expediente de utilidad y necesidad en el cual se fundó este pleito
es un procedimiento que está contenido en los artículos 80 y 82 de
la Ley sobre Procedimientos Legales Especiales, aprobada por la Le-
gislatura de Puerto Rico en 9 de marzo de 1905, y en las enmiendas
que se hicieron a dicha ley en el año 1907, y no en las disposiciones
citadas en el Código de Enjuiciamiento Civil de España y de la Ley
Hipotecaria.  (Véase el artículo 85 de la Ley de Procedimientos Le-
gales Especiales que deroga todas las leyes anteriores que estén en
conflicto con la misma.)  La ley vigente en la fecha en que se dictó
la resolución apelada no exige los requisitos en cuyo incumplimiento
se fundó la acción establecida por el demandante, o sea, la citación
al fiscal y a los menores apelantes, citación al menor emancipado,
falta de su consentimiento, etc.  Esto resulta claramente de una lec-
tura que se haga de los estatutos y de un estudio del curso de la
legislación aprobada en esta isla con referencia a las cuestiones que
están comprendidas en esta transacción."

La apelante insiste en que el artículo 205 de la Ley Hipo-
tecaria que fijaba la intervención del fiscal, estaba vigente;
pero sus razonamientos no han convencido a esta corte.  En
tal virtud se aplica y afirma la doctrina del caso de *Busó,
supra.*

2. El otro motivo de nulidad alegado es el de la falta de
prueba.  El artículo 82 de la Ley de Procedimientos Legales
Especiales prescribe que cuando se trate de la enajenación
de bienes inmuebles, como en este caso, se acompañará la
certificación del precio con que figuran los bienes en el ca-
tastro de contribuciones y se hará constar el precio mínimo
que se piensa obtener.  Estos requisitos se cumplieron debi-
damente.  Y prescribe además dicho artículo, lo que sigue:

"La corte admitirá y practicará las pruebas que se le ofrezcan
sobre la utilidad o necesidad de la enajenación o gravamen y resol-
verá en definitiva lo que procediere siendo apelable la resolución
que se dicte."

Este último extremo es el único dudoso en este caso. A nuestro juicio ni antes ni ahora podía ni puede concederse por una corte autorización para vender o·gravar bienes de menores sin prueba de la necesidad o utilidad de la transacción. La sola solicitud, no obstante estar jurada, no es suficiente. Se necesita algo más. ¿Existió ese algo más en este caso? A nuestro juicio existió, aunque en una forma poco recomendable. Las cortes no deben aceptar meros *affidavits* en casos de esta naturaleza. Los testigos deben comparecer personalmente y ser interrogados ante la corte y por la corte si ésta lo estimare necesario.·

Se han citado los casos de *Meléndez* v. *El Registrador,* 17 D. P. R. 605, y *Hermida* v. *Gestera,* 23 D. P. R. 100.· En el primero se resolvió que "De acuerdo con los artículos 390 y 391 de la Ley Hipotecaria, no derogados por ninguna ley posterior, la manera de presentar la prueba en los expedientes posesorios es compareciendo personalmente los testigos ante la corte que ha de dictar resolución en el expediente, única que tiene jurisdicción para recibir las declaraciones de los testigos, siendo ineficaces como medio de prueba las declaraciones juradas o *affidavits.*" Y en el segundo se decidió, copiando ·también del resumen, que "El objeto de los *affidavits* no es el de contener declaraciones para surtir efecto en los juicios. Los testigos han de declarar oralmente o por medio de deposiciones·a fin de que la parte contraria como el juez, tengan oportunidad de aquilatar sus manifestaciones."

La verdadera doctrina está contenida en los dos resúmenes que anteceden. Los *affidavits* tienen el uso que la misma ley señala y que se indica en el curso de la opinión en el caso de *Meléndez, supra,* pero debe tenerse en cuenta que en·el dicho caso de Meléndez se interpretaba además de°la Ley de Evidencia un precepto de la Ley Hipotecaria que expresamente exigía lo que sigue: "La información se verificará con dos o más testigos, vecinos propietarios   *   *   * " y en este

caso la ley habla en general de pruebas y no puede negarse que un *affidavit* puede utilizarse como prueba en ciertos casos. El caso de *Hermida, supra,* era un pleito controvertido y aquí se trata de un procedimiento especial *ex parte.* De ahí que aunque hayamos consignado nuestra opinión en el sentido de que es una práctica que no debe seguirse, no debamos concluir que por el solo hecho de haberse la corte basado en la solicitud jurada, en la certificación del Tesorero y en las declaraciones juradas de tres personas presentadas en forma de *affidavits,* para conceder la autorización, sea ésta completamente nula, sobre todo, en ausencia absoluta no ya de fraude, sino de la más leve injusticia. Al contrario, analizando los hechos, de ellos claramente surge la utilidad de la transacción autorizada.

Es un hecho que en Puerto Rico se ha venido dando a los *affidavits* un alcance que en realidad de verdad no tienen según la ley y los precedentes americanos. En bien de los intereses de sus clientes y de la buena práctica, los abogados y notarios y los jueces deben considerar esta cuestión cuidadosamente. Recomendamos el estudio del trabajo del profesor Throckmorton que ocupa las páginas 314 a 377 del volumen 2 de Corpus Juris. En este caso concreto que resolvemos, repetimos, son las circunstancias concurrentes las que nos han llevado a la confirmación de la sentencia. De otro modo, técnicamente, nos hubiéramos visto obligados a revocarla.

3. En su alegato la parte apelante sostiene que habiendo el juez Cuevas Zequeira desestimado la excepción previa interpuesta a la demanda, su sucesor el juez Berga no tenía autoridad para fallar el pleito en la forma en que lo hizo, esto es, prácticamente revocando la decisión de su antecesor en la cuestión fundamental de derecho envuelta en el litigio.

La decisión de una excepción previa no es la determinación final del pleito a menos que se registre como sentencia. El pleito continúa su curso y la misma cuestión puede ser

de nuevo levantada y resuelta en sentido contrario. Véase
31 Cyc. 350. Y el hecho de que un juez debidamente nom-
brado intervenga en un pleito después de decidida por su
antecesor una excepción previa, no le priva de facultad para
resolver la misma cuestión en sentido contrario, si de nuevo
se suscita, o debe necesariamente resolverla al pronunciar su
sentencia. Dicho juez tiene en tal caso las mismas facultades
y deberes que su antecesor.

Por virtud de todo lo expuesto, debe declararse sin lugar
el recurso y confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Aldrey, Hutchison
y Franco Soto.

El Juez Asociado Sr. Wolf disintió.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

La Ley de Procedimientos Legales Especiales de 1905
fué tomada de fuentes españolas y el artículo 82 de la
misma en inglés debe leer (como aparece en castellano en
la opinión de la corte) como sigue:

"La corte admitirá y practicará las pruebas que se le ofrez-
can" etc.

En realidad de verdad las palabras "admitirá" y "prac-
ticará," como se emplean en el texto español deben ser tra-
ducidas por la palabra "admitirá." Hago esta aclaración
porque el texto inglés es trunco.

Si es meramente una mala práctica, como se consigna
en la opinión de la mayoría, presentar *affidavits* en la venta
de propiedad de menores y no es contraria a la ley, enton-
ces las partes y los abogados tienen derecho en proceder a
presentar *affidavits* no obstante la advertencia de esta corte.
La idea que tengo es que la letra y espíritu de la ley es de
otro modo. "Admitirá y practicará pruebas" quiere decir
que la corte considerará pruebas. "Pruebas," sostengo que

debe ser traducida por "evidencia" (*evidence*). Pero aun cuando la palabra ".pruebas" (*proofs*) se emplee como en el texto inglés, un *affidavit* no es *prueba* excepto en los casos especialmente reconocidos en el artículo 128 de la Ley de Evidencia, como ha indicado esta corte en el caso de *Meléndez* v. *Registrador,* 17 D. P. R. 605, y *Hermida & Palos* v. *Gestera,* 23 D. P. R. 100. Estos casos aunque ligeramente diferenciados fueron citados y me parece que aprobados en la opinión de la mayoría.

En cuanto al espíritu de la ley o su verdadera intención éste fué un procedimiento para disponer de la propiedad de un menor. No se asemeja a un injunction preliminar donde las partes tienen otra vista. Es una disposición definitiva de la propiedad y la corte debe tener la oportunidad de oir prueba y examinar testigos en interés de las personas *non sui juris.* La corte es una protectora.

La opinión de la mayoría al sugerir que no hubo ningún fraude en este caso evidentemente suponía que los meros *affidavits* podrían abrir el camino al fraude. No es tanto lo que efectivamente se ha hecho bajo una supuesta autoridad como lo que puede hacerse, lo que debe constituir la prueba. Véanse entre otros el caso de *City of Rochester* v. *West,* 164 N. Y. 510–14, y el de *Matter of Jones* v. *People,* 10 App. Div. (N. Y.) 59.

Cuando un menor llega a su mayoridad si su propiedad ha sido vendida, que han transcurrido años sería la regla más bien que la excepción. Por tanto con frecuencia surge una dificultad cuando se trata de dejar sin efecto la venta de tal propiedad. Una cuestión de derecho en tal caso no debe quedar afectada por el transcurso del tiempo u otra consideración semejante.

A mi juicio el caso no se defiende con sugerir que la venta es beneficiosa para los menores. El principio de *stare decisis* es menos aplicable en este caso que en el de *Martorell* v. *Ochoa,* 276 Fed. 99 .

La opinión de la mayoría dice ciertamente que se ha

desarrollado en Puerto Rico una práctica que no existe en el continente pero en el año 1911, cuando fué autorizada esta venta, la ley de 1905 había estado en vigor por más de unos cinco años y no tenemos constancia de cuando fué comenzada la práctica.

A medida que se nos han presentado los casos hemos tratado de indicar el verdadero uso de los *affidavits*. *Meléndez* v. *El Registrador; Hermida & Palos* v. *Gestera, supra*, y el presente caso. En mi opinión las premisas aceptadas debieron haber inducido a una revocación.