EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Seguros Múltiples de Puerto Rico y Pentagon Federal Credit Union<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | 2026 TSPR 36<br><br>218 DPR ___ |

Número del Caso: CC-2025-0230

Fecha: 9 de abril de 2026

Tribunal de Apelaciones:Panel XI

Oficina del Procurador General:

Hon. Omar Andino Figueroa
Procurador General

Lcdo. Pedro J. García Flores
Procurador General Auxiliar

Lcdo. Frank A. Rosado Méndez
Subprocurador General

Representante legal de la parte recurrida:

Lcdo. Armando Franceschi Figueroa

Materia: Confiscaciones – Doctrina de impedimento colateral por sentencia es inaplicable al proceso de impugnación de confiscación civil en ausencia de una adjudicación expresa en otro procedimiento que se celebre por los mismos hechos que establezca que el bien confiscado no fue utilizado en la comisión de algún delito.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cooperativa de Seguros Múltiples de Puerto Rico y Pentagon Federal Credit Union<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | CC-2025-230 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 9 de abril de 2026.

> "Lower court judges may sometimes disagree with this court's decisions, but they are never free to defy them. […] [W]hen this Court issues a decision, it constitutes a precedent that commands respect in lower courts." <u>National Institutes of Health, *et al.* v. American Public Health Association, *et al.*</u>, 606 US __, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring in part and dissenting in part).

Mediante esta Opinión nos vemos obligados a reiterar el precedente establecido en <u>Universal Ins. y otro v. ELA y otros</u>, *infra*, para reafirmar que la doctrina de impedimento colateral por sentencia es inaplicable al proceso de confiscación civil en ausencia de una **adjudicación expresa** en otro procedimiento que se celebre por los mismos hechos, sea

penal, civil o administrativo, que establezca que el bien confiscado no fue utilizado en la comisión de algún delito.

Por las razones que expondremos, expedimos en reconsideración el recurso de *certiorari* presentado por el Gobierno de Puerto Rico (Gobierno o Estado) para revocar la *Sentencia* emitida por el Tribunal de Apelaciones.

**I**

El 18 de marzo de 2023, agentes del orden público ocuparon un vehículo de motor marca Ford, modelo F-150 XLT de 2021 (vehículo o camioneta), con tablilla número 1076357, por infracción a los Artículos 3.23-A y 5.06 de la Ley Núm. 22-2000, según enmendada, conocida como Ley de Vehículos y Tránsito de Puerto Rico (Ley de Tránsito), 9 LPRA secs. 5073 y 5126. Como resultado de dicha intervención, el 24 de marzo de 2023 el Ministerio Público emitió una orden de confiscación. Posteriormente, la Junta de Confiscaciones notificó la confiscación mediante carta del 13 de abril de 2023.

A su vez, el Ministerio Público presentó una *Denuncia* en contra del Sr. Francisco Falcón López (señor Falcón López), quien conducía la camioneta al momento de su ocupación, imputándole los actos que dieron lugar al proceso de confiscación. Sin embargo, celebrada la vista de causa probable para arresto, el Tribunal de Primera Instancia concluyó que no existían méritos para continuar el procedimiento penal iniciado.

El 15 de mayo de 2023, Pentagon Federal Credit Union (Pentagon) y la Cooperativa de Seguros Múltiples de

Puerto Rico (Seguros Múltiples) presentaron una *Demanda* contra el Estado en la que impugnaron la confiscación realizada. Ambas entidades alegaron que la Sra. Nancely Serrano Cruz, titular registral del vehículo, no incurrió en el delito que motivó la confiscación de la camioneta. Por tanto, solicitaron que se decretara la nulidad de la confiscación y que se ordenara la devolución del vehículo.

El 8 de junio de 2023, el Gobierno presentó su contestación a la *Demanda*. En esencia, negó la mayoría de las alegaciones formuladas por Pentagon y Seguros Múltiples, excepto aquellas relacionadas con las circunstancias que rodearon la ocupación y eventual confiscación de la camioneta.

Más adelante, y tras la celebración de una vista para determinar la legitimación activa de la parte demandante, el Tribunal de Primera Instancia determinó que Pentagon era la única parte con legitimación activa para impugnar la confiscación. Luego de otras incidencias procesales, el 23 de julio de 2024 Pentagon presentó una petición de sentencia sumaria. Allí, sostuvo que la determinación de no causa para arresto emitida en el procedimiento penal seguido en contra del conductor del vehículo implicaba que la camioneta no había sido utilizada en la comisión de los actos delictivos que dieron origen a la confiscación. En esa misma línea, argumentó que tal adjudicación constituía un impedimento colateral por sentencia respecto al proceso civil de confiscación.

Por su parte, el 3 de septiembre de 2024, el Estado presentó su oposición a la solicitud de sentencia sumaria.

En síntesis, sostuvo que la determinación de no causa para arresto no implicaba que el vehículo no hubiera sido utilizado en la comisión de un delito. Asimismo, el Gobierno argumentó que, conforme a la ley y a la jurisprudencia interpretativa, la doctrina de impedimento colateral por sentencia era inaplicable en este caso. Consecuentemente, planteó que, ante la ausencia de evidencia suficiente para rebatir la presunción de legalidad y corrección de la confiscación civil, no procedía disponer del pleito de forma sumaria.

El 5 de septiembre de 2024, el foro primario emitió una *Sentencia* mediante la cual dispuso que,

> [l]a prueba documental incontrovertida ante este [t]ribunal establece que el Sr. Francisco Falcón López ciertamente conducía el vehículo confiscado el 18 de marzo de 2023 por el Municipio de Toa Baja. También[,] podemos concluir de la prueba en autos que el 5 de abril de 2023 un [t]ribunal de [j]usticia concluyó que no había ni una mera posibilidad de que el Sr. Falcón López haya incurrido en la conducta conocida como regateo, al punto de no determinar causa probable para arresto contra el mismo. Con esta prueba analizada por este [t]ribunal, no podemos concluir que existe prueba suficiente y preponderante [de] que el vehículo de motor conducido por el Sr. Falcón López fuese utilizado en la conducta conocida como regateo.[1]

Asimismo, el Tribunal de Primera Instancia emitió el pronunciamiento siguiente:

> Dado a que la conducta delictiva imputada por el Estado en el caso civil de confiscación, es intrínsecamente la misma conducta imputada al conductor del vehículo, y que por su naturaleza, los elementos del delito no pueden ser divisivos entre el vehículo de motor y la actuación de su conductor, una vez se adjudica la conducta [de] este último como una conducta no delictiva, tal

---

[1] *Sentencia* emitida por el Tribunal de Primera Instancia el 5 de septiembre de 2024, Apéndice del *certiorari*, págs. 112-133.

adjudicación resulta ser, para todos los efectos jurídicos y prácticos, una adjudicación expresa en cuanto a la no participación del vehículo en actividad de regateo. Nuestro estado de derecho no admite otra conclusi[ó]n lógica.

[…]

El elemento esencial del delito de regateo es precisamente el conducir un vehículo junto a uno o más vehículos de motor en exceso de velocidad, en competencia de aceleración o de velocidad entre los vehículos. Por ello, su naturaleza no permite separar la conducta prohibida y penalizada al acto realizado por el conductor del vehículo. Lo contrario presupondría que el vehículo incurrió en regateo de forma independiente a la actuación de su conductor, cosa que nos llevaría a resultados ilógicos y carentes de sentido práctico o jurídicos. (Negrillas y subrayado en el original).[2]

A la luz de lo anterior, el foro primario declaró con lugar tanto la solicitud de sentencia sumaria presentada por Pentagon como la *Demanda* de impugnación de confiscación.

Inconforme, el 13 de septiembre de 2024 el Estado presentó una moción de reconsideración. En ella, reiteró que, ante la ausencia de una adjudicación expresa que estableciera que la camioneta no fue utilizada en la comisión de un delito, no procedía la aplicación de la figura de impedimento colateral por sentencia. Ese mismo día, el Tribunal de Primera Instancia denegó la solicitud de reconsideración mediante una *Orden* emitida el 13 de septiembre de 2024. El foro primario expresó lo siguiente:

[E]l vehículo confiscado objeto del pleito de autos no estuvo envuelto en el delito imputado, lo cual es final y firme. Sin embargo, el Gobierno esboza que la parte demandante no ha demostrado que el vehículo "no fue utilizado en la comisión de algún delito". ¿En qué posible delito pudo

---

[2]    Íd., págs. 117-118.

> haber sido utilizado el vehículo? Si no hubo *regateo*, ¿qué prueba este [t]ribunal podría evaluar de la parte demandante para derrotar la presunción de la legalidad de la confiscación? ¿No le estaría requiriendo el [t]ribunal a la parte demandante probar un negativo?[3]

Aún en desacuerdo, el 15 de noviembre de 2024 el Gobierno presentó una *Apelación Civil* ante el Tribunal de Apelaciones. En esencia, planteó que el Tribunal de Primera Instancia erró al declarar con lugar, de manera sumaria, la demanda presentada por Pentagon, pues, además de ser contrario a derecho, la determinación de no causa para arresto contra el conductor del vehículo no constituía una adjudicación expresa de que la camioneta no fue utilizada en los actos ilícitos por los que fue confiscada. De ese modo, sostuvo que no procedía aplicar la doctrina de impedimento colateral por sentencia.

Por su parte, el 7 de enero de 2025 Pentagon presentó su alegato. En su escrito, reafirmó el planteamiento de que la determinación de no causa para arrestar al conductor de la camioneta por el delito de "regateo" implicaba, de manera insoslayable, que éste no incurrió en dicha conducta ilícita. Por tal razón, sostuvo que debía concluirse que el vehículo no fue utilizado en la comisión del delito que motivó su confiscación, pues resultaba evidente que no podía conducirse por sí solo.

El 31 de enero de 2025, el foro apelativo intermedio emitió una *Sentencia* en la que una mayoría del Panel confirmó

---

[3] *Orden* emitida por el Tribunal de Primera Instancia el 13 de septiembre de 2024, Apéndice del *certiorari*, pág. 132.

la determinación del foro recurrido. En lo pertinente, dispuso lo siguiente:

> Tras una revisión *de novo* de la totalidad del expediente que obra ante nos, determinamos que no existen hechos materiales en controversia. Ahora bien, es un hecho incontrovertido que, bajo el procedimiento penal, el [Tribunal de Primera Instancia] no encontró causa para arresto en contra del conductor del vehículo. De tal modo que, un [t]ribunal ya adjudicó, de manera final y firme, los hechos relacionados a la alegada actividad delictiva en la que estuvo involucrado el bien confiscado. En otras palabras, dicho dictamen tuvo el efecto de adjudicar con finalidad el hecho central, tanto en el caso criminal como en el de confiscación, es decir, que el objeto confiscado no se utilizó en carreras clandestinas. Asimismo, se eliminó el nexo causal entre la comisión del delito y la propiedad confiscada.[4]

En cambio, la jueza Álvarez Esnard disintió de la determinación adoptada por la mayoría y expresó lo siguiente:

> El Estado entre sus alegaciones expuso que, en el caso de marras, no era de aplicación la doctrina de impedimento colateral por sentencia, conforme a lo resuelto en *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). No empece a lo antes expuesto, la mayoría de este Panel no distingue en la Sentencia emitida la Opinión de nuestra Más Alta Curia del presente caso. **Por tanto, conforme a la Ley de Confiscaciones Uniforme de 2011, según enmendada y la normativa jurídica vigente, no puedo colegir con la mayoría de este Panel.** (Énfasis suplido).[5]

El 18 de febrero de 2025, el Estado presentó una moción de reconsideración, pero fue declarada no ha lugar. Así las cosas, el 21 de abril de 2025 compareció ante este Tribunal mediante una petición de *certiorari*, en la que señaló los errores siguientes:

---

[4] *Sentencia* emitida por el Tribunal de Apelaciones el 31 de enero de 2025, Apéndice del *certiorari*, pág. 165.

[5] Íd., págs. 166-167.

Erró el Tribunal de Apelaciones al resolver que aplica la doctrina de impedimento colateral por sentencia a la impugnación de la confiscación del automóvil sin que en el procedimiento penal iniciado por los mismos hechos se adjudicase expresamente que el automóvil no fue utilizado en carreras clandestinas ("regateo"), como exige el Artículo 15 de la *Ley Uniforme de Confiscaciones de 2011*, *supra*, y lo resuelto por esta Alta Curia en *Universal Ins. Co. v. ELA*, 211 DPR 455 (2023).

Erró el Tribunal de Apelaciones al exigir al Estado demostrar en una etapa sumaria que el vehículo confiscado se utilizó para cometer actividad delictiva[,] cuando en nuestro ordenamiento las confiscaciones están cobijadas por una presunción de corrección, por ende, únicamente luego de rebatida válidamente esta es que corresponde al Estado demostrar que se ha cometido un delito y el nexo causal entre tal delito y la propiedad confiscada.

En reconsideración, emitimos una *Resolución* el 31 de octubre de 2025 mediante la cual le concedimos a Pentagon un término de veinte (20) días, contado a partir de la notificación de la *Resolución*, para que mostrara causa por la cual no debíamos expedir el recurso de *certiorari* presentado por el Gobierno, con el fin de revocar las determinaciones de los tribunales recurridos. Así las cosas, el 21 de noviembre de 2025 Pentagon compareció mediante un escrito en oposición a la expedición del *certiorari*. Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

### A. La aplicación del precedente jurídico

Por disposición constitucional, el Tribunal Supremo de Puerto Rico es el tribunal de última instancia. Art. V, Sec. 3, Const. PR, LPRA, Tomo 1. Conforme a este mandato, nuestras decisiones constituyen, salvo los limitados derechos de revisión del Tribunal Supremo de Estados Unidos, la

expresión última, suprema y obligatoria de la interpretación de las leyes. Andino Torres, *Ex parte*, 152 DPR 509, 519 (2000), voto de inhibición del Juez Asociado Señor Rivera Pérez. Véanse, además: Op. Sec. Just. Núm. 1983-11; R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2.ª ed. rev., San Juan, Pubs. JTS, 1987, pág. 153.

Los precedentes judiciales que emitimos no sólo resuelven los litigios que se nos presentan, sino que también orientan a la ciudadanía y constituyen una guía vinculante para los tribunales inferiores. Íd. La consistencia en las decisiones es indispensable, pues fomenta la excelencia en la práctica de la profesión, evita la incertidumbre de los jueces cuando se enfrentan a los casos que deben resolver y promueve la seguridad jurídica, cuya uniformidad constituye el eje fundamental de la ley. Util. Cons. Servs. v. Mun. de San Juan, 115 DPR 88, 92-93 (1984), opinión disidente del Juez Asociado Señor Rebollo López. Lo mencionado no implica que este o cualquier otro tribunal esté atado de manera inflexible e inexorable a lo resuelto en el pasado, ya que el derecho es dinámico y evoluciona constantemente. Íd., pág. 93. Sin embargo, no cambia de manera súbita ni radical de un día a otro o de una semana a otra. Íd.

Este Tribunal ha señalado que la doctrina del precedente judicial o *stare decisis* no tiene el efecto de convertir nuestras opiniones en un dogma que deba seguirse ciegamente cuando nos convencemos posteriormente de que la decisión anterior es incorrecta. Com. PNP v. CEE *et al.*, 197 DPR 914,

923 (2017). Así, hemos establecido ciertos criterios que justifican, de manera excepcional, apartarnos de un precedente: (1) cuando la decisión anterior era claramente errónea; (2) cuando sus efectos sobre el resto del ordenamiento son adversos, y (3) cuando la cantidad de personas que han confiado en ella es limitada. Rivera Ruiz et al. v. Mun. de Ponce et al., 196 DPR 410, 429 (2016). En otras palabras, una vez emitimos nuestras ponderadas opiniones, estas no deben variarse salvo que sean tan manifiestamente erróneas que no puedan sostenerse sin violentar la razón y la justicia. Hernández Jiménez et al. v. AEE et al., 194 DPR 378, esc. 23 (2015); González v. Merck, 166 DPR 659, 688 (2006); Vega v. Caribe G.E., 160 DPR 682, 692 (2003); Capestany v. Capestany, 66 DPR 764, 767 (1946); San Miguel, Etc. & Cía v. Guevara, 64 DPR 966 esc. 6 (1945); Banco de Ponce v. Iriarte, 60 DPR 72, 79 (1942); García Fernández, Ex parte, 44 DPR 296, 300 (1932).

Conscientes de la importancia de preservar la certeza judicial, mientras este Tribunal no revoque ni modifique la doctrina establecida en sus decisiones, los tribunales y organismos inferiores están obligados a seguirla en los casos en que sea aplicable. Capestany v. Capestany, supra, pág. 767. Debe recordarse que las "Opiniones de este Tribunal son 'ley' en esta jurisdicción al igual que las aprobadas por la Asamblea Legislativa". Almodóvar v. Méndez Román, 125 DPR 218, esc. 13 (1990). Así, cuando se establecen normas sobre una materia que ha sido desarrollada por vía jurisprudencial, la decisión judicial debe estar basada en un pensamiento

consistente y sistemático, ya que las vacilaciones y contradicciones podrían tener un efecto contrario a la estabilidad y certidumbre que se busca garantizar. R.E. Bernier y J.A. Cuevas Segarra, *op. cit.*, pág. 203.

**B. La Ley Uniforme de Confiscaciones de 2011**

**i. La confiscación de los bienes**

La Ley Núm. 119-2011, según enmendada, conocida como Ley Uniforme de Confiscaciones de 2011 (Ley de Confiscaciones), 34 LPRA sec. 1724, *et seq.*, establece un procedimiento diseñado para garantizar el debido proceso de ley a los dueños de bienes confiscados. Su propósito principal es ponerle fin a trámites dilatorios y evitar que los tribunales continúen congestionados por las demandas presentadas para impugnar las confiscaciones efectuadas. Exposición de Motivos de la Ley Núm. 119-2011 (2011 [Parte 2] Leyes de Puerto Rico 1762).

Hemos señalado que la confiscación es el acto mediante el cual el Estado ocupa todo derecho de propiedad sobre bienes que hayan sido utilizados en relación con la comisión de ciertos delitos. CSM v. ELA, 2025 TSPR 78, 216 DPR __ (2025); Universal Ins. y otro v. ELA y otros, 211 DPR 455, 463 (2023); Coop. Seg. Múlt. *et als*. v. ELA *et al.*, 209 DPR 796, 804 (2022); Reliable v. Depto. Justicia y ELA, 195 DPR 917, 924 (2016). Así pues, el Gobierno puede confiscar toda propiedad que resulte, sea producto o se utilice durante la comisión de delitos graves, así como de aquellos menos graves en los cuales por ley se autorice la confiscación, siempre que tales delitos estén tipificados en el Código Penal de Puerto Rico o en otros estatutos en los que por ley se

autorice la confiscación. Art. 9 de la Ley de Confiscaciones, 34 LPRA sec. 1724f. Véanse, también: CSM v. ELA, *supra*; Universal Ins. y otro v. ELA y otros, *supra*, pág. 463.

Este Tribunal ha reconocido dos (2) modalidades en el proceso de confiscación: (1) la confiscación *in personam*, y (2) la confiscación *in rem*. CSM v. ELA, *supra*; Coop. Seg. Múlt. *et als*. v. ELA *et al.*, *supra*, 805. La confiscación *in personam* forma parte del proceso criminal dirigido en contra de una persona imputada de delito. CSM v. ELA, *supra*; Universal Ins. y otro v. ELA y otros, *supra*, pág. 464; Coop. Seg. Múlt. *et als*. v. ELA *et al.*, *supra*, pág. 805. Si la persona resulta culpable, procede que se emita una sentencia en la que se incluya, como sanción, la confiscación de la propiedad incautada. Íd.

Por otro lado, **la modalidad *in rem* constituye una acción civil, independiente de cualquier procedimiento penal**, **que se dirige contra la cosa misma y no contra el propietario, poseedor, encargado o cualquier otra persona con interés legal sobre el bien**. CSM v. ELA, *supra*; Universal Ins. y otro v. ELA y otros, *supra*, pág. 464; Coop. Seg. Múlt. *et als*. v. ELA *et al.*, *supra*, pág. 805. Esta es la modalidad que rige en nuestro ordenamiento jurídico por virtud de la Ley de Confiscaciones. CSM v. ELA, *supra*; Coop. Seg. Múlt. *et als*. v. ELA *et al.*, *supra*, pág. 805.

La naturaleza *in rem* permite que los procesos de confiscación se lleven a cabo y concluyan antes de que se acuse, se declare culpable o se absuelva al acusado. Art. 8 de la Ley de Confiscaciones, 34 LPRA sec. 1724e. Debido

al carácter civil de este proceso, la culpabilidad o inocencia del acusado no debe tomarse en cuenta en el proceso de confiscación; sólo debe considerarse la adjudicación de los hechos en sus méritos. Íd. Lo determinante es si el bien fue utilizado para cometer un delito independientemente del resultado de la acción criminal o de alguna otra naturaleza. Íd. Véase, además, CSM v. ELA, *supra;* Universal Ins. y otro v. ELA y otros, *supra*, págs. 467-468.

### ii. La presunción de legalidad y corrección, y el peso de la prueba en los casos de confiscaciones

La Regla 301 de las Reglas de Evidencia de 2009 (Reglas de Evidencia), 32 LPRA Ap. VI, R. 301, define una presunción como "una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción. A ese hecho o grupo de hechos previamente establecidos se les denomina hecho básico. Al hecho deducido mediante la presunción, se le denomina hecho presumido".

Por virtud de la Ley de Confiscaciones, existe una presunción *iuris tantum* a favor del Estado, mediante la cual **se presume la legalidad y corrección de la confiscación realizada por el Gobierno, independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado con los mismos hechos.** Art. 15 de la Ley de Confiscaciones, 34 LPRA sec. 17241. **Por ende, recae sobre el demandante el peso de la prueba para derrotar dicha presunción.** Íd. Es decir, el demandante debe demostrar, mediante preponderancia de la prueba, que **la propiedad**

**confiscada no fue utilizada en una actividad o acto ilegal.** CSM v. ELA, *supra.* Lo anterior implica que, si la parte contra la cual opera la presunción -en este caso, la parte demandante- no presenta prueba para rebatir el hecho básico, el juzgador estará obligado a dar por probado el hecho presumido. Consejo Tit. v. Rocca Dev. Corp. *et als.*, 2025 TSPR 6, 215 DPR __ (2025). Véase, además, Regla 302 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 302. No obstante, "[s]i se presenta evidencia en apoyo a la inexistencia de tal hecho, la parte que interesa rebatir la presunción debe persuadir a quien juzga de que es más probable la inexistencia que la existencia del hecho presumido". Íd.

Finalmente, hemos reiterado que la procedencia de la confiscación *in rem* se sustenta en el cumplimiento de dos (2) requisitos fundamentales: (1) que exista prueba suficiente y preponderante de que se ha cometido un delito, y (2) que exista un nexo entre la comisión del delito y la propiedad confiscada. CSM v. ELA, *supra;* Universal Ins. y otro v. ELA y otros, *supra*, pág. 466. Como corolario, **la culpabilidad o inocencia del propietario o dueño de la cosa en el proceso criminal es irrelevante en cuanto a la procedencia o no de la confiscación civil.** CSM v. ELA, *supra;* Universal Ins. y otro v. ELA y otros, *supra*, pág. 468.

### iii. La doctrina de impedimento colateral por sentencia en la impugnación de confiscaciones

Respecto a la aplicación de la doctrina de impedimento colateral por sentencia en los procesos de impugnación

de confiscación, la Asamblea Legislativa estableció lo siguiente:

Se dispone que, **no será de aplicación** en los procesos de confiscación, la doctrina de impedimento colateral por sentencia en las siguientes instancias:

(a) [c]uando el acusado haya hecho alegación de culpabilidad;

(b) cuando el acusado se someta a un programa de desvío;

(c) cuando el acusado fallezca antes o en medio del proceso que se esté llevando a cabo en contra de su persona;

**(d) en ausencia de alguna adjudicación expresa en otro proceso penal, civil o administrativo, que se celebre por los mismos hechos que dieron lugar a la confiscación, en la cual se determine que el bien confiscado no fue utilizado en la comisión de algún delito**; y

(e) en cualquier otra instancia que no se cumplan con los requisitos de la doctrina. (Negrilla y subrayado suplidos). Art. 8 de la Ley de Confiscaciones, *supra*.

Cabe señalar que, al interpretar la mencionada disposición en Universal Ins. y otro v. ELA y otros, *supra*, este Tribunal se ciñó estrictamente al estado de derecho vigente en ese momento **-el cual prevalece hasta la fecha-** y realizó un análisis ponderado y sosegado de los elementos relevantes para disponer de la controversia ante su consideración. Allí resolvimos que la doctrina de impedimento colateral por sentencia no puede ser invocada en un procedimiento de impugnación de confiscación civil como fundamento para obtener un dictamen sumario en contra del Estado. Íd., pág. 458. En particular, reconocimos la intención clara y expresa de la Asamblea Legislativa al

enmendar el Art. 8 de la Ley de Confiscaciones, *supra*, con el objetivo de excluir la aplicación de la figura de impedimento colateral en las situaciones específicas contempladas en dicho estatuto. Universal Ins. y otro v. ELA y otros, *supra*, pág. 470. Así, concluimos que la enmienda tuvo el efecto de delimitar de manera taxativa las instancias en las que sería procedente o no invocar la doctrina de impedimento colateral por sentencia en un procedimiento judicial en virtud de la Ley de Confiscaciones. Íd., pág. 471.

En ese contexto, determinamos que, **en ausencia de una adjudicación expresa** en otro proceso que estableciera que el bien confiscado no fue utilizado en la comisión de un delito, o de alguna otra circunstancia que justificara apartarse de la norma general, no cabía hablar de la doctrina de impedimento colateral por sentencia. Íd., págs. 474-475. Ciertamente, lo anterior no implica que un litigante que impugne una confiscación pueda prevalecer si demuestra, mediante la prueba correspondiente, que se ha configurado una excepción a la prohibición que surge de la Ley de Confiscaciones. Íd., pág. 475.

**III**

En esencia, el Gobierno arguye que la *Sentencia* recurrida contraviene el precedente pautado en Universal Ins. y otro v. ELA y otros, *supra*, así como la Ley de Confiscaciones, en la medida en que el Tribunal de Apelaciones aplicó la figura de impedimento colateral por sentencia al proceso de impugnación de la confiscación de una camioneta sin que, en el procedimiento criminal iniciado por los mismos hechos, se

adjudicara expresamente que el vehículo no fue utilizado en la comisión de un delito. **Le asiste la razón**. El Estado también sostiene que el foro apelativo intermedio erró al exigir, en una etapa sumaria, que se probara que la camioneta confiscada se utilizó para cometer un delito, a pesar de que en nuestro ordenamiento las confiscaciones gozan de una presunción de corrección y legalidad. En ese sentido, el Gobierno plantea que, una vez se rebate válidamente dicha presunción, corresponde al Estado demostrar que se cometió un delito, así como el nexo causal entre éste y el bien confiscado. **También le asiste la razón**.

En cambio, Pentagon argumenta que los foros inferiores no erraron al apartarse del precedente establecido en Universal Ins. y otro v. ELA y otros, *supra*, ya que la actividad ilegal conocida como "regateo", utilizada en el presente caso como base para la confiscación civil del vehículo, requiere intrínsicamente que el conductor lo utilice como medio para llevar a cabo la conducta antijurídica. Es decir, Pentagon señala que la cosa está inexorablemente atada a la actuación del sujeto imputado y es parte esencial del elemento del delito o estatuto confiscatorio, tanto en el proceso penal como en el civil. Así, sostiene que la situación excepcional del caso de autos debe llevar a este Tribunal a apartarse de la norma general que rechaza la aplicación de la doctrina de impedimento colateral por sentencia en el proceso civil de confiscación, según establecida en nuestras decisiones más recientes.

En cuanto al peso de la prueba, Pentagon aduce que las determinaciones de hechos en el proceso penal, aunque guarden silencio literal sobre el objeto confiscado, pueden tener valor probatorio suficiente al evaluar el hecho central de la confiscación (esto es, si se cometió o no un delito y el nexo con la propiedad) dependiendo de la naturaleza del delito examinado. Sostiene, además, que una vez se impugna judicialmente la confiscación y el demandante presenta prueba de que el conductor de la camioneta no incurrió en "regateo", como ocurrió en este caso, corresponde a la parte que invoca la presunción aportar prueba que establezca la presencia de los elementos de un delito y su conexión con la propiedad, pues de lo contrario la presunción no cobra vida jurídica. Por último, Pentagon argumenta que la determinación de no causa para arresto en el caso particular del "regateo" tiene, cuanto menos, el efecto de trasladar el peso de la prueba al Gobierno.

De entrada, cabe señalar que, aunque no se trataba del mismo delito, _Universal Ins. y otro v. ELA y otros_, _supra_, fue resuelto en el mismo contexto del presente caso: la disposición sumaria de una impugnación de confiscación mediante la aplicación de la figura de impedimento colateral por sentencia, basada en una determinación de no causa para arresto en un procedimiento penal paralelo incoado por los mismos hechos.

Debido a que la situación de hechos que examinamos no difiere sustancialmente de aquella que ya ha sido objeto de análisis por este Tribunal, nos vemos en la necesidad de

reiterar el precedente establecido en el 2023 en el caso mencionado y reafirmado en CSM v. ELA, *supra*, en el 2025. Una vez más, el Gobierno se ha visto obligado a recurrir ante este Foro para que se deje sin efecto la **errónea determinación en derecho** emitida por los tribunales inferiores al aplicar **incorrectamente** la doctrina de impedimento colateral por sentencia como fundamento para disponer sumariamente de una acción en la cual se impugnó una confiscación civil.

A pesar de que el expediente del presente caso carece de una adjudicación expresa de que el bien confiscado no fue utilizado en la comisión del delito de "regateo", la mayoría de los miembros del Panel del Tribunal de Apelaciones optó por no aplicar la norma de derecho prevaleciente en nuestro ordenamiento sobre este asunto sin siquiera distinguirla. Ello ocurrió luego de que el foro apelativo intermedio accediera abordar de manera distinta **el delito** que dio lugar a la confiscación del bien en controversia, en comparación con el delito considerado en Universal Ins. y otro v. ELA y otros, *supra*.

Cabe señalar que, tanto en Universal Ins. y otro v. ELA y otros, *supra*, como en el caso que hoy atendemos, la parte demandante fundamentó su moción de sentencia sumaria en la determinación de no causa para arrestar al conductor del vehículo por el delito que motivó la confiscación, sin que existiera una adjudicación expresa de que el mismo no fue utilizado en la comisión de algún delito.

Como expresáramos, debido a la naturaleza *in rem* de las confiscaciones, éstas se instan contra la cosa misma y no

contra su poseedor. Esta ficción legal permite desvincular la legalidad de la confiscación del resultado de cualquier procedimiento paralelo que pueda incoarse contra la persona a quien se le haya imputado utilizar o producir el bien confiscado en la conducta ilícita que dio lugar a su confiscación. De ahí la importancia de la independencia entre ambas acciones, pues "la culpabilidad o inocencia del propietario [de la cosa o bien] es irrelevante en cuanto a la procedencia o no de la confiscación civil". Íd., pág. 468. **Tampoco resulta relevante el tipo de delito al momento de determinar si la figura de impedimento colateral por sentencia es aplicable a una acción en la que se impugne una confiscación.** Para determinar si la doctrina es aplicable o no, basta con referirse al mandato claro y expreso del Art. 8 de la Ley de Confiscaciones, *supra*.

En esa línea, si el foro primario se confronta con cualquiera de las instancias que se detallan en el artículo mencionado, viene obligado a descartar la aplicación de la figura de impedimento colateral por sentencia en un procedimiento impugnatorio de una confiscación. Universal Ins. y otro v. ELA y otros, *supra*, pág. 473. De igual forma, el estado de derecho vigente impide que una confiscación pueda ser derrotada mediante el mecanismo de sentencia sumaria cuando el único fundamento invocado es la doctrina de impedimento colateral por sentencia y no concurre ninguna circunstancia excepcional que así lo justifique. Íd., pág. 474. Por consiguiente, el desenlace del procedimiento penal basado en los mismos hechos resulta

totalmente impertinente, por lo que no procede disponer del caso de forma sumaria. Íd.

En cuanto a la presunción de legalidad y corrección de la confiscación impugnada, como señala el Estado, corresponde a Pentagon rebatir la presunción que favorece al Gobierno. Al así hacerlo recaerá sobre el Estado la carga de probar el hecho presumido. En este caso, no existe controversia respecto a que la confiscación realizada activó dicha presunción. Sin embargo, ésta no puede ser rebatida mediante la determinación de no causa para arrestar a favor del conductor del vehículo confiscado en otro proceso paralelo relacionado con los mismos hechos. Dado que el principal argumento de Pentagon para aplicar la doctrina de impedimento colateral por sentencia se basó en esa determinación de no causa para arresto, resolvemos que no logró rebatir la presunción de legalidad y corrección como le correspondía ni trasladar el peso de la prueba al Gobierno. A la luz de lo anterior, erró el Tribunal de Apelaciones al exigir al Estado demostrar, en una etapa sumaria, que la camioneta confiscada se utilizó para cometer una actividad delictiva.

De otro lado, del expediente ante este Tribunal se desprende que la determinación de no causa para arresto a favor del señor Falcón López, junto con el tipo de delito imputado, fue crucial para que el juzgador decidiera disponer de la causa de acción de manera sumaria y sin sujeción a la norma establecida por este Foro. No obstante, lo verdaderamente determinante para este Tribunal es que del récord no se desprende que, en el procedimiento criminal

paralelo, se haya emitido una adjudicación expresa de que el vehículo confiscado no fue utilizado en actividad criminal alguna, tal como lo requiere el Art. 8 de la Ley de Confiscaciones, *supra*. **Por lo tanto, reiteramos que, conforme al estado de derecho y a la jurisprudencia vigente, una determinación de no causa para arresto no puede considerarse como una adjudicación expresa de que el vehículo no fue utilizado para cometer un delito**. Así las cosas, en ausencia de circunstancias excepcionales que justifiquen apartarnos del precedente establecido en <u>Universal Ins. y otro v. ELA y otros</u>, *supra*, y su progenie, resolvemos que el foro apelativo intermedio erró al no revocar el dictamen emitido por el Tribunal de Primera Instancia. **En consecuencia, el proceso de impugnación de la confiscación deberá proseguir a la etapa de juicio, en el que Pentagon tendrá la oportunidad de rebatir, con prueba admisible, la presunción de corrección y legalidad de la confiscación de la camioneta.**

Finalmente, entendemos que algunos jueces puedan simpatizar más con las opiniones disidentes de ciertos miembros de este Tribunal que con los precedentes emitidos por la Mayoría tras un estudio mesurado y ponderado. Sin embargo, estén o no de acuerdo, los jueces de los foros inferiores deben seguir y respetar la norma establecida en <u>Universal Ins. y otro v. ELA y otros</u>, *supra*. **<u>Para evitar cualquier duda o malentendido, lo reiteramos de forma clara: la doctrina de impedimento colateral por sentencia no aplica en los casos en los que se impugne una confiscación civil,</u>**

**cuando, además de cumplirse cualquiera de las demás instancias establecidas en el Art. 8 de la Ley de Confiscaciones, *supra*, no exista una adjudicación expresa en otro proceso penal, civil o administrativo, celebrado por los mismos hechos que dieron lugar a la confiscación, en la que se determine que el bien confiscado no fue utilizado en la comisión de un delito**. Íd.

La determinación adoptada por el foro primario, la cual fue confirmada por una mayoría del Panel del Tribunal de Apelaciones sin que se realizara el ejercicio necesario para distinguir la norma establecida por este Foro -como correctamente lo advirtió la jueza Álvarez Esnard en su disenso-, es contraria a la esencia de nuestro sistema judicial jerárquico, cuyo funcionamiento depende de que las decisiones de los tribunales de mayor jerarquía sean acatadas y ejecutadas por los jueces de jerarquía inferior. Véase In re Candelaria Rosa, 197 DPR 445, 468 (2017). Permitir una actuación contraria a este principio supondría un sistema judicial disfuncional, carente de orden y efectividad. Íd. La autoridad y legitimidad del Poder Judicial descansa, necesariamente, en que se acaten sus decisiones y mandatos. Íd.

Aunque, en ocasiones, los jueces podamos discrepar de la intención y voluntad legislativa, estamos obligados a respetarla. R.E. Bernier y J.A. Cuevas Segarra, *op. cit.*, pág. 299. Por ello, al interpretar un estatuto, debemos abstenernos de sustituir el criterio legislativo por nuestros conceptos de lo que es justo, razonable o deseable. Íd.

**IV**

Por los fundamentos antes expresados, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones el 31 de enero de 2025, así como la *Sentencia* emitida por el Tribunal de Primera Instancia el 5 de septiembre de 2024. En consecuencia, se devuelve el caso al foro primario para la continuación de los procedimientos en conformidad con lo resuelto en esta Opinión.

Se dictará Sentencia en conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Cooperativa de Seguros Múltiples de Puerto Rico y Pentagon Federal Credit Union<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | CC-2025-230 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico a 9 de abril de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones el 31 de enero de 2025, así como la *Sentencia* emitida por el Tribunal de Primera Instancia el 5 de septiembre de 2024. En consecuencia, se devuelve el caso al foro primario para la continuación de los procedimientos de acuerdo con esta Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente y emite la expresión siguiente:

"Una vez más, me veo compelida a disentir y, así, sostener que una determinación final y firme de no causa para arresto debe constituir impedimento colateral por sentencia para la causa civil de impugnación de confiscación que se presente por los mismos hechos de la causa criminal. A mi juicio, un resultado favorable para los imputados en la vista de causa probable para arresto es suficiente para derrotar la presunción de legalidad y corrección de la confiscación efectuada.

De entrada, la confiscación se deriva de un acto ilícito. Es decir, un vehículo es confiscable en la medida en que se haya utilizado para la comisión de un delito. Ahora bien, un vehículo, por sí mismo, carece de voluntad o capacidad para incurrir en una conducta delictiva; depende necesariamente de la conducta de la persona que lo conduzca. Por ende, la única manera en que un vehículo puede considerarse involucrado en un delito es si su conductor incurrió en la conducta delictiva imputada.

De lo anterior se desprende una secuencia que conduce a una conclusión lógica ineludible. Si el juzgador determinó que no existe base para sostener que el conductor incurrió en la conducta penal imputada, se desvanece el nexo que vincularía al vehículo con la actividad ilegal. En consecuencia, resulta incompatible afirmar que dicho vehículo fue utilizado para la comisión del delito alegado. Por lo tanto, la acción civil de confiscación no puede subsistir de manera independiente del hecho delictivo que supuestamente la origina.

En estos escenarios, es forzoso concluir que cuando el Estado no cumple con el peso de la prueba en la vista de causa probable para arresto, este no tiene la posibilidad de probar el hecho material de la ocurrencia de una actividad delictiva en el pleito civil de impugnación de la confiscación. Por ello, reitero los fundamentos que esbocé en CSM v. ELA, 2025 TSPR 78, 216 DPR __ (2025), Universal Ins. y otro v. ELA y otros, 211 DPR 455(2023), y en mi *Opinión disidente* en MAPFRE *et al.* v. ELA, 209 DPR 910(2022)".

El Juez Asociado señor Estrella Martínez disiente y emite la expresión siguiente:

"Nuevamente, este Tribunal se ve en la necesidad de reiterar y explicarle a la comunidad jurídica una construcción legal ficticia en materia de confiscaciones civiles, cuya aplicación resulta incompatible con los principios fundamentales de nuestro ordenamiento constitucional. En esta ocasión, la mayoría reafirma erróneamente que no procede anular la confiscación de un vehículo al amparo de la doctrina de impedimento colateral por sentencia, salvo que exista una adjudicación expresa —en un proceso penal, civil o administrativo— que establezca que el bien confiscado no fue utilizado en la comisión de un delito. Esta

postura enfatiza, de manera incorrecta, que una determinación de no causa emitida en una vista de causa probable para arresto no constituye una adjudicación expresa que exonere a la propiedad en cuestión dentro de un proceso confiscatorio civil. Máxime, cuando como en este caso, la camioneta Ford, modelo F-150 XLT se confiscó por presuntamente haberse utilizado en carreras de competencia o regateo y ni siquiera hubo una determinación de causa probable para arresto de la persona que la conducía.

Así las cosas, disiento respetuosamente por las mismas razones y fundamentos que consigné en mi expresión disidente en *CSM v. ELA*, 2025 TSPR 78, 216 DPR ____ (2025) y en mis opiniones disidentes en *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023) y *Coop. Seg. Múlt. et als. v. ELA et al.*, 209 DPR 796 (2022). En esta última, expresé que "la confiscación civil de un bien sin mediar una convicción penal vulnera las garantías del debido proceso de ley, a no ser privado de la propiedad sin justa compensación, la prohibición contra multas excesivas y registros y allanamientos irrazonables, así como la presunción de inocencia". *Coop. Seg. Múlt. et als. v. ELA et al., supra*, págs. 812-813. Este menoscabo a las garantías constitucionales persiste, incluso, en casos como el presente en el que no hubo una determinación judicial de causa probable para arresto a la persona vinculada al bien mueble confiscado.

En ese sentido, me veo en la obligación de reiterar que, a mi juicio, la confiscación de un bien sin que medie una condena penal constituye un impedimento colateral por sentencia en el pleito civil en el cual se impugna la confiscación realizada por el Estado. Lo contrario crea una falsa disociación entre ambos procedimientos con la pretensión de que el objeto confiscado, en sí mismo, pudiese ser culpable de la comisión de un acto delictivo. Véase, *Coop. Seg. Múlt. et als. v. ELA et al., supra*, págs. 822-823. Me sostengo en que nuestro ordenamiento jurídico sencillamente no permite esta incongruencia.

Es conveniente recordar que este Tribunal ha reafirmado que, para que una confiscación *in rem* o civil sea procedente, deben cumplirse dos (2) requisitos fundamentales: primero, debe presentarse prueba suficiente y preponderante de que se ha cometido un delito; y segundo, debe establecerse un nexo entre ese delito y el bien

confiscado. Véanse, *Doble Seis Sport v. Depto. Hacienda,* 190 DPR 763, 784 (2014); *Suárez v. E.L.A.,* 162 DPR 43, 52 (2004); *Del Toro Lugo v. E.L.A.,* 136 DPR 973, 983 (1994). Por tanto, como se observa en este caso, si en un procedimiento penal, particularmente en la etapa de causa probable para arresto, no existe ni una *scintilla* o umbral mínimo de evidencia para demostrar la comisión de un delito, es imposible cumplir con el segundo requisito. Así pues, considero que la determinación de no causa tiene el efecto jurídico de quebrantar cualquier posible nexo causal entre el presunto delito y la propiedad confiscada. Como resultado, ello proscribe la confiscación civil de un bien que, por su naturaleza, es inherentemente lícito.

Enfatizo que la confiscación representa una forma de privación de propiedad que debe cumplir con las garantías mínimas del debido proceso de ley. Art. II, Sec. 9, Const. PR, LPRA, Tomo 1. Además, como he reiterado, la mera designación formal de un procedimiento de confiscación como civil o criminal no resuelve la interrogante sobre su verdadera naturaleza y propósito punitivo. Después de todo, la confiscación actúa, en la práctica, como una sanción penal adicional impuesta contra quienes se presume han incurrido en conducta delictiva. *Bco. Bilbao Vizcaya et al. v. ELA et al.,* 194 DPR 116, 156 (2015) (Voto particular disidente del Juez Asociado señor Estrella Martínez); *Centeno Rodríguez v. E.L.A.,* 170 DPR 907, 913 (2007); *Santiago v. Supte. Policía de P.R.,* 151 DPR 511, 515-516 (2000); *Del Toro Lugo v. E.L.A., supra,* pág. 987; *Carlo v. Srio. de Justicia,* 107 DPR 356, 362 (1978). Como resultado, en ausencia de prueba suficiente para acreditar la comisión de un delito, resulta insostenible y carece de fundamento jurídico el pretender que subsiste un nexo causal entre ese presunto acto o evento delictivo y el bien objeto de confiscación.

Como he señalado, no podemos pretender seguir validando una interpretación aislada y textualista de Ley Núm. 119-2011, conocida como la *Ley Uniforme de Confiscaciones,* 34 LPRA sec. 1724 *et seq.,* sin considerar en este análisis las garantías constitucionales aplicables. En ese sentido, no puede considerarse constitucional que el estatuto declare irrelevante la culpabilidad o no culpabilidad del propietario en cuanto a la procedencia de la confiscación civil. Sostener la validez de esta ficción jurídica es, en

definitiva, incompatible con los postulados de nuestro ordenamiento constitucional. Véanse, *CMS v. ELA, supra,* (Expresión disidente del Juez Asociado señor Estrella Martínez y *Coop. Seg. Múlt. et als. v. ELA et al., supra*, pág. 812 (Opinión disidente del Juez Asociado señor Estrella Martínez).

En fin, reitero mis pronunciamientos anteriores en materia de confiscaciones civiles cuando no media una condena penal por los mismos hechos que motivaron la confiscación y, por consiguiente, disiento respetuosamente".

El Juez Asociado señor Colón Pérez emitió una Opinión Disidente.


                                        Javier O. Sepúlveda Rodríguez
                                        Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Seguros Múltiples de Puerto Rico y Pentagon Federal Credit Union<br><br>      Recurridos<br><br>      v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>      Peticionarios | CC-2025-230 |

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

> "[E]l propósito inspirador de la doctrina de *stare decisis* es lograr estabilidad y certidumbre en la ley, mas nunca perpetuar errores".
>
> *Am. Railroad Co. v. Comisión Industrial*, 61 DPR 314, 326 (1943).

En San Juan, Puerto Rico, a 9 de abril de 2026.

Una vez más, -- estando llamados y llamadas a determinar si, tras un dictamen final y firme de no causa para arresto contra un conductor por una presunta violación al delito de "regateo",[1] procedía aplicar la figura de impedimento

---

[1] En particular, contra el Sr. Francisco Falcón López (en adelante, "señor Falcón López"), se presentó una *Denuncia*, mediante la cual se le imputó infringir los Artículos 3.23 y 5.06 de la Ley Núm. 22-2000, según enmendada, conocida como la *Ley de Vehículos y Tránsito de Puerto Rico*, 9 LPRA secs. 5073 y 5126. En lo pertinente, dicho estatuto prohíbe "las carreras de competencia, los concursos de velocidad y los concursos de aceleración […] en las carreteras estatales y municipales de Puerto Rico cuando las mismas no sean autorizadas". *Íd.* Esta práctica se conoce comúnmente como "regateo". **Tras examinar la prueba presentada por el Ministerio Público, el Tribunal de Primera Instancia concluyó, -- mediante un dictamen que advino final y firme --, que no existían méritos ni tan siquiera para hallar causa probable para arresto contra el señor Falcón López.** Los presuntos actos que motivaron la referida acción penal extinguida fueron los que, precisamente, dieron pie a la confiscación del vehículo que manejaba el señor Falcón López y los cuales originaron la controversia ante nuestra consideración.

colateral por sentencia en una acción civil de impugnación de confiscación de un vehículo de motor --, una mayoría de mis compañeros y compañeras de estrado, en un proceder a todas luces erróneo, y tras la aplicación automática de determinados precedentes establecidos por este Tribunal, concluye que la referida doctrina no aplica a causas como las de autos.

**Ante ese proceder, nos parece menester aprovechar la presente oportunidad para reflexionar, un poco, sobre la función del precedente en nuestro ordenamiento, así como las razones que nos deben mover a apartarnos de él cuando las circunstancias y los tiempos así lo exigen. Veamos.**

I.

Los hechos medulares que dan margen al presente litigio no están en controversia, razón por la cual hemos decidido adoptar los mismos por referencia. Siendo ello así, procedemos, pues, a plasmar, en este escrito, nuestra reflexión acerca de la doctrina del precedente jurídico y su relación con lo dispuesto en la causa de epígrafe.

II.

A.

Como se sabe, la doctrina del precedente, -- también conocida como *stare decisis* --, es aquella que, como regla general, establece que los tribunales deben seguir determinaciones anteriores en casos posteriores, de modo que se propicie estabilidad y certidumbre en las relaciones jurídicas. *Pérez Rodríguez v. López Rodríguez*, 210 DPR 163,

194-195 (2022); *Com. PNP v. CEE et al.*, 197 DPR 914, 922-923 (2017); *Pueblo v. Díaz De León*, 176 DPR 913, 921 (2009).

**El nombre completo de la doctrina es *stare decisis et quieta non movere*, lo que se puede traducir como "estar a lo decidido y no perturbar lo ya establecido, lo que está quieto".** S. Legarre y J. C. Rivera, *Naturaleza y dimensiones del "stare decisis"*, 33 (Núm. 1) Rev. Chil. Der. 109 (2006).

Así pues, se ha dicho que la mencionada doctrina opera en dos (2) dimensiones o vertientes: la vertical y la horizontal. En su dimensión vertical, la doctrina de *stare decisis* "alude a la obligación de los tribunales [inferiores] de seguir los precedentes de sus superiores jerárquicos". *Íd.*, pág. 113. De otra parte, en su dimensión horizontal, esta doctrina "se refiere a la obligación de los tribunales de seguir sus propios precedentes". *Íd.*

En nuestra jurisdicción, la modalidad vertical de la doctrina de *stare decisis* se manifiesta como el deber del Tribunal de Primera Instancia y del Tribunal de Apelaciones de seguir las pautas que ha establecido este Tribunal en casos similares que tengan ante su consideración,[2] cuando éstos no presenten elementos que permitan distinguirlos de los

---

[2] Para que adquiera fuerza de precedente vinculante, se requiere que este Tribunal haya emitido una opinión. Ello, debido a que nuestras sentencias, -- aunque altamente persuasivas --, "no constituye[n] precedente de este Tribunal, por lo que no obliga[n] al Tribunal de Apelaciones [ni al Tribunal de Primera Instancia] […], y mucho menos nos obliga[n] a nosotros". *Delgado, Ex parte*, 165 DPR 170, 182 (2005). *Véase*, *también*, *Rivera Maldonado v. E.L.A.*, 119 DPR 74 (1987); *Díaz v. Colegio Nuestra Sra. Del Pilar*, 123 DPR 765, 777 (1989); *Figueroa Méndez v. Tribunal Superior*, 101 DPR 859, 863 (1974).

anteriores.[3] Es decir, lo anterior significa que las opiniones de este Tribunal se convierten en una fuente de derecho obligatoria y de aplicación general para los foros inferiores. J. M. Farinacci Fernós, *La doctrina del "stare decisis" en Puerto Rico*, 52 Rev. Jur. UIPR 67 (2018).

**Empero, para la correcta disposición de los asuntos que nos ocupan, resulta particularmente importante la dimensión horizontal de la doctrina de *stare decisis*. Ésta, -- la cual, como cuestión de hecho, sólo aplica a este Tribunal --, opera cuando identificamos algún precedente en nuestra jurisprudencia que podría aplicar a una controversia ante nos, el cual generalmente debemos respetar.** *Íd.*

**Ahora bien, establecido lo anterior, conviene mencionar aquí que la regla del precedente no supone que las opiniones de este Tribunal sean un dogma que deba seguirse aun cuando nos convenzamos posteriormente de que nuestra decisión anterior es errónea y no resiste un análisis cuidadoso.** *Pérez Rodríguez v. López Rodríguez*, *supra*, pág. 195; *Com. PNP v. CEE et al.*, *supra*, pág. 923; *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 391 (2012); *Pueblo v. Díaz De León*, *supra*, pág. 922; *Am. Railroad Co. v. Comisión Industrial*, 61 DPR 314, 326 (1943). **Como veremos más adelante, desde su concepción, se ha reconocido que la regla de *stare decisis* "no debe aplicarse mecánicamente porque congelaría en el tiempo precedentes**

---

[3] S. Legarre y J. C. Rivera, *Naturaleza y dimensiones del "stare decisis"*, 33 (Núm. 1) Rev. Chil. Der. 109, 113 (2006) ("El tema de la analogía es crucial para la técnica del precedente. La falta de similitud entre un caso y un determinado precedente permite distinguirlos y, por tanto, no aplicar el precedente al nuevo caso que tiene elementos relevantes distintos. Esto se conoce como *distinguishing*").

claramente absurdos o erróneos". *González v. Merck*, 166 DPR 659, 677 (2006) (Hernández Denton, opinión de conformidad). **Ello, pues, "el propósito inspirador de la doctrina de *stare decisis* es lograr estabilidad y certidumbre en la ley, mas nunca perpetuar errores".** *Am. Railroad Co. v. Comisión Industrial*, *supra*, pág. 326.

**Recordemos que "[n]uestra función judicial nos obliga a velar celosamente porque nuestras decisiones no sólo sean correctas en derecho, sino que también estén bien fundamentadas. En vista de ello, no procede recurrir a la doctrina de *stare decisis* para evadir nuestra ineludible obligación de velar por la corrección de nuestros dictámenes".** *González v. Merck*, *supra*, pág. 690 (Hernández Denton, opinión de conformidad).

Teniendo en mente esas nociones generales sobre la doctrina de *stare decisis*, procedemos, pues, a examinar el trasfondo histórico, la incorporación y el desarrollo de la misma en nuestra jurisdicción, así como la evolución de los acercamientos que le ha dado este Tribunal.

B.

Como es sabido, aunque la doctrina de *stare decisis* está firmemente establecida en nuestro ordenamiento, no siempre fue así. Su adopción y evolución en el derecho puertorriqueño ha seguido un trayecto accidentado y contradictorio. Farinacci Fernós, *supra*, pág. 68. Ante esa situación, y como ya mencionamos, nos parece apropiado aprovechar la presente oportunidad para examinar detenidamente las transformaciones

que ha experimentado esta norma, de modo que estemos mejor posicionados para esbozar nuestra propuesta metodológica.

Ese trasfondo al que hicimos referencia se puede dividir en tres (3) grandes etapas: (1) primero, un periodo inicial, caracterizado por una adopción difusa e informal de la mencionada doctrina; (2) luego, una fase intermedia, marcada ya por una incorporación formal de la doctrina de *stare decisis*, aunque con ciertas vacilaciones entre aplicaciones más duras o rígidas y otras más débiles o flexibles; y (3), finalmente, la versión actual de la mencionada doctrina, la cual consiste en un análisis multifactorial que se ha ido liberalizando recientemente.

i.

Sobre este último extremo, precisa señalar que, desde el año 1903, este Tribunal ya había adoptado cierta noción de la doctrina de *stare decisis* en su vertiente vertical. Es decir, ya se reconocía el concepto de que las determinaciones del más Alto Foro Judicial vinculaban a los tribunales inferiores. Véase *Ex parte Mauleon*, 4 DPR 123 (1903); *Martorell et al. v. J. Ochoa y Hermano*, 25 DPR 759 (1917) (Wolf, opinión disidente); *Chabert v. Sánchez*, 29 DPR 241 (1921); *González v. Roig et al.*, 31 DPR 35 (1922).

Sin embargo, tomaría hasta el año 1920 para que surgiera la primera referencia indirecta a la vertiente horizontal de la mencionada doctrina, -- a saber, que este Tribunal tiene que respetar y seguir sus propias determinaciones anteriores --, en el caso *Martínez v. Campillo, Juez de Distrito*, 28 DPR

316 (1920). Allí, el Juez Asociado señor Wolf indicó que "[a]unque el que suscribe esta opinión disintió de la opinión de este tribunal emitida en mayo 11, 1919, […] se siente, sin embargo, momentáneamente obligado por dicha decisión". *Íd.*

Seis (6) años después, este Tribunal aludió, -- por primera vez de manera expresa --, a la doctrina de *stare decisis* en el caso *Barros v. Padial*, 35 DPR 258 (1926). Allí, también en voz del Juez Asociado señor Wolf, y en lo relacionado con los asuntos que en ese entonces teníamos ante nuestra consideración, pronunciamos que, luego de identificar una tendencia en al menos siete (7) casos anteriores, "[s]ostener otra cosa sería intervenir con la regla de *stare decisis* o algo así, aun suponiendo que estuviéramos de algún modo dispuestos de un primer examen a dar una interpretación diferente al estatuto". *Íd.*, pág. 262. Al así hacerlo, esta Curia señaló que, indistintamente de lo que se haya resuelto en otras jurisdicciones cuyas tradiciones jurídicas estén relacionadas con Puerto Rico, -- como España o Filipinas --, esas determinaciones "no pueden variar la regla firmemente establecida por nosotros y con la cual estamos todavía completamente en armonía". *Íd.*, pág. 262-263.

ii.

Si bien este Tribunal, en sus dictámenes, ya había acogido nociones de la doctrina de *stare decisis*, no fue hasta el año 1932 que incorporó este principio formalmente en el caso *García Fernández, ex parte*, 44 DPR 296 (1932). Allí, luego de identificar varios precedentes en los que se aplicó

reiteradamente una misma norma para resolver controversias similares, este Alto Foro, -- citando extractos de opiniones judiciales emitidas por Jeremiah Sullivan Black, quien fue Juez Presidente de la Corte Suprema de Pennsylvania, contenidas en su biografía de la obra *Great American Lawyers* --, pronunció lo siguiente:[4]

> **Una vez que una cuestión ha sido deliberadamente resuelta luego de argumentos solemnes, no debe ser variada, a menos que sea tan manifiestamente errónea que no pueda sostenerse sin violentar la razón y la justicia.** Así lo afirma, no una corriente, sino un torrente de autoridades. **Ningún juez que sienta el debido respeto hacia el principio de *stare decisis* -- ese gran principio que es el áncora de salvación de nuestra jurisprudencia -- puede negar que esta inamoviblemente establecido. […] Por supuesto, no estoy diciendo que debamos consagrar los meros errores de los que nos precedieron, y tropezar cada vez que lleguemos al sitio donde ellos tropezaron. Un error palpable, que viole la justicia, la razón y el derecho, debe corregirse, no importa quién lo haya cometido.** (Énfasis Suplido). *García Fernández*, *supra*, págs. 300-301.

Sobre el alcance de lo anterior, el profesor Jorge M. Farinacci Fernós nos explica que "*García Fernández* se convirtió en el caso *leading* del *stare decisis* en nuestro País[, …] se convirtió en el *stare decisis* del *stare decisis* por muchas décadas". Farinacci Fernós, *supra*, pág. 72. Asimismo, dicho académico señala que la versión del *stare decisis* allí adoptada fue una fuerte; es decir, que "hacía difícil la revocación del precedente". *Íd.*, pág. 73.

---

[4] M. C. Klingelsmith, *Jeremiah Sullivan Black*, en *Great American Lawyers: The lives and influence of judges and lawyers who have acquired permanent national reputation, and have developed the jurisprudence of the United States. A history of the legal profession in America* (W. D. Lewis, ed.), Philadelphia, The John C. Winston Co., 1909, Vol. VI, págs. 13-14.

Empero, y no empece a lo antes dicho, la tendencia sentada en *García Fernández*, *supra*, de mantener una versión fuerte e inflexible de la doctrina del precedente, pareció culminar en el caso *American Railroad Co. of P.R. v. Comisión Industrial de P.R.*, *supra*. Allí, este Tribunal expuso que,

> **si bien la doctrina de *stare decisis* obliga a un tribunal a seguir sus decisiones en casos posteriores a fin de lograr la estabilidad y certidumbre que deben existir en la ley, […] esa doctrina no llega al extremo de declarar que la opinión de un tribunal tenga el alcance de un dogma que deba seguirse ciegamente aun cuando el tribunal se convenza posteriormente que su decisión anterior es errónea.** Como insinuamos antes, el propósito inspirador de la doctrina de *stare decisis* es lograr estabilidad y certidumbre en la ley, mas nunca perpetuar errores. (Énfasis suplido). *American Railroad Co. of P.R. v. Comisión Industrial de P.R.*, *supra*, pág. 326.

Así, pues, "las expresiones fuertes de *García Fernández* han sido principalmente citadas [para] mantener la validez de un precedente anterior, mientras que la excepción pautada en *American Railroad* ha servido de base normativa […] para revocar una decisión previa". Farinacci Fernós, *supra*, pág. 74. Cónsono con ello, en casos posteriores a *American Railroad*, *supra*, integrantes de este Alto Foro continuaron desarrollando esa modalidad flexible del *stare decisis*.[5]

---

[5] *Véase Arvelo v. Rodríguez*, 69 DPR 159, 168 (1948) (Snyder, opinión disidente) ("La regla de stare decisis no es inflexible"); *Irizarry v. Pueblo*, 75 DPR 786, 830 (1954) (Ortiz, opinión concurrente) ("El *stare decisis* no justifica la perpetuación de un error, y no debe servir de sustituto al proceso de ponderado raciocinio"); *Ocasio v. Díaz*, 88 DPR 676, 754 (1963) (Negrón Fernández, opinión concurrente) ("La doctrina de *stare decisis* tiene que descansar en la virtud misma del precedente que se invoca y ninguna interpretación errónea de la ley--con particular razón una interpretación restrictiva de legislación reparadora que va a la

iii.

Ahora bien, la versión contemporánea de la doctrina del *stare decisis* en nuestra jurisdicción, se planteó, por vez primera, en cierta *Opinión de Conformidad* emitida por el entonces Juez Presidente de este Tribunal señor Hernández Denton en el caso *González v. Merck*, *supra* (Hernández Denton, opinión de conformidad). En el referido escrito, el Juez Presidente señor Hernández Denton propuso tres (3) elementos que el jurista o la jurista debe considerar al momento de decidir si se debe, o no, revocar un precedente, a saber: "(1) la decisión anterior era claramente errónea; (2) los efectos de la decisión sobre el resto del ordenamiento son adversos, y (3) la cantidad de personas que confían en la decisión es limitada". *Íd.*, pág. 688.

Años más tarde, el referido análisis de tres (3) factores, expuesto en *González v. Merck*, *supra*, se incorporó en una nota al calce del caso *Pueblo v. Camacho Delgado*, 175 DPR 1, 20 esc. 4 (2008). Asimismo, una mayoría de este Tribunal adoptó dicho marco tripartita, -- ya claramente como parte del derecho aplicable --, en *Pueblo v. Díaz de León*, *supra*, pág. 922, así como en casos posteriores.[6]

Por último, y en lo que consideramos un lamentable proceder, en casos más recientes, -- como *Pueblo v. Sánchez Valle et al.*, 192 DPR 594 (2015) --, al tratar la doctrina de

entraña misma de nuestra sociedad--debe sentar plaza eterna en el orden jurídico para consagrar estados negatorios de la personalidad humana").

[6] *Véase E.L.A. v. Crespo Torres*, 180 DPR 776, 796-797 (2011); *Rodríguez v. Hospital*, 186 DPR 889, 916 (2012); *Pueblo v. Sánchez Valle et al.*, 192 DPR 594, 645-646 (2015); *Rivera Ruiz et al. v. Mun. de Ponce et al.*, 196 DPR 412, 429 (2016); *Com. PNP v. CEE*, 197 DPR 914, 923 (2017).

*stare decisis,* se ha seguido una práctica de abordar únicamente el primer criterio, relativo a determinar si la decisión anterior es errónea, y prescindir del resto de los factores, relacionados con las consecuencias adversas sobre el ordenamiento y la cantidad de personas que confían en el precedente. Farinacci Fernós, *supra*, pág. 79. Tal curso de acción, seguido en decisiones recientes por una mayoría de mis compañeros y compañeras de estrado, a todas luces, desnaturaliza los principios más básicos que dan origen a la doctrina aquí bajo estudio.

C.

Habiendo discutido el desarrollo histórico de la doctrina de *stare decisis*, nos corresponde ahora delinear lo que, -- a nuestro juicio --, debe ser el acercamiento correcto a dicha doctrina en el ámbito contemporáneo. Para ello, nos parece apropiado tomar como base el sistema de tres (3) factores expuesto por el entonces Juez Presidente señor Hernández Denton en *González v. Merck, supra,* que hemos empleado hasta el momento, pero imprimiéndole a éste ciertos matices que nos parecen meritorios enunciar.

Como ya indicamos, al analizar cuándo procede revocar un precedente, debemos evaluar: (1) la corrección de la decisión anterior, (2) la relación de ese precedente con el resto del ordenamiento y (3) la cantidad de personas que confían en esa determinación anterior. Repasemos, al detalle, cada uno.

i.

**En cuanto al primer criterio de *González v. Merck*, *supra*, se ha dicho que éste se refiere "a la exigencia tradicional de que se demuestre lo 'manifiestamente erróneo' de la decisión que se revoca".** *González v. Merck*, *supra*, págs. 688-689 (Hernández Denton, opinión de conformidad). **Para el Juez Presidente señor Hernández Dentón, ello se podría demostrar "mediante prueba de que, durante el proceso deliberativo que produjo la decisión del tribunal, no se consideraron detenidamente todos los argumentos que aplican al caso".** *Íd.*

Abundando un poco más en el primer criterio, nos parece que, en estos tiempos, el análisis del mismo no se debe enfocar en la calidad o extensión de los argumentos que se consideraron cuando se tomó la decisión anterior, sino, más bien, en la corrección, racionalidad, vigencia y eficacia de la norma finalmente pautada. Ello se debe a que el interés que persigue ese primer criterio, en realidad, responde a la idoneidad de la regla plasmada, y no al proceso que nos condujo a ella.[7]

**En ese sentido, al enfrentarnos a la interrogante de si un precedente está errado, nos parecen particularmente ilustradores varios de los ejemplos que presenta el Exjuez Asociado del Tribunal Supremo federal Stephen Breyer en su obra *Reading the Constitution: Why I Chose Pragmatism, Not Textualism*, Nueva York, Simon & Schuster, 2024. Allí, menciona**

---

[7] Así pues, puede que un caso en el que los alegatos de las partes hayan atendido vagamente un planteamiento haya concluido en la enunciación de una norma muy sólida que merezca mantenerse durante décadas, como también podría darse la situación de que los más completos y razonados escritos hayan desembocado en la adopción de un precedente desatinado o inadecuado que amerite revocarse.

**que un fundamento válido para revocar un precedente es que el derecho, -- ya sea por la vía estatutaria o por la jurisprudencial --, ha evolucionado de una manera tal que ya no puede decirse que el caso anterior es consistente con la norma vigente.** *Íd.*, pág. 189. **Así también, el Juez Breyer apunta a que otra razón legítima para descartar un caso anterior es que haya ocurrido un cambio fáctico fundamental que erosione la premisa básica que sustentaba lo determinado previamente.** *Íd.*, págs. 189-190. **Mientras que otro escenario que podría justificar revocar un precedente, según el Juez Breyer, es que lo decidido antes haya resultado ser inejecutable, inefectivo, impráctico o perjudicial para los intereses que se quisieron adelantar.** *Íd.*, págs. 190-191.

ii.

Habiendo dicho ello, -- y en lo pertinente a los restantes otros dos (2) criterios que se recogen en *González v. Merck*, *supra*, --, resulta importante llamar la atención a la tendencia reciente de una mayoría de este Tribunal de obviar los mismos en el momento en que, para disponer de determinado caso, invoca la doctrina del precedente, desnaturalizando así los principios más básicos que dieron origen a la misma. A nuestro juicio, tal proceder es indeseable y erróneo, pues atenta contra la ponderación que el sistema de análisis tripartita supone alcanzar.

Y es que, examinar los tres (3) factores expuestos en *González v. Merck, supra,* de manera integrada, consigue moderar o equilibrar la determinación de si cierto precedente

merece ser revocado, o no. Además, el evaluar, en conjunto, todos los factores antes enumerados evita los problemas que conlleva exigir un grado determinado de error de la decisión anterior para descartarla. Ello así, puesto que, enfocarse únicamente en el primero de los factores, generalmente, implica que el análisis se incline a determinar si el precedente está lo suficientemente errado como para conllevar su revocación, lo que supone un criterio altamente subjetivo y de muy poca ayuda al juzgador o a la juzgadora. Por consiguiente, el mero hecho de determinar que un precedente es erróneo como justificación para eliminarlo, -- sin considerar los otros dos (2) factores, como el efecto que la revocación de un precedente tendría en el resto del ordenamiento o las personas que confían en él --, podría conducir a un disloque jurídico y social innecesario.

iii.

**Ya para ir finalizando esta parte de nuestro escrito, nos parece importante dirigirnos hacia otro aspecto de la doctrina de *stare decisis* que requiere nuestra atención. Se trata de la necesidad de diferenciar entre la interpretación estatutaria y la interpretación constitucional a la hora de considerar si es apropiado revocar un precedente.**

Sobre el particular, es menester señalar que si bien, por un lado, la literatura favorece un acercamiento más flexible y cambiante cuando se trata de precedentes relativos a una interpretación constitucional, -- debido a lo difícil que resulta enmendar la Carta Magna ante la necesidad de corregir

un error de interpretación judicial, así como los cambios socioeconómicos y culturales que inciden en ella --;[8] por otro lado, una versión flexible o débil de esta doctrina, en el ámbito constitucional, facilita la revocación de precedentes que han establecido derechos fundamentales en los que la gente confía. A modo de ejemplo, recordemos el caso de *Dobbs v. Jackson Women's Health* Organization, 597 U.S. 215 (2022), el cual revocó el precedente que estableció el derecho federal al aborto, -- luego de éste haberse reconocido hace más de cinco (5) décadas --, en *Roe v. Wade*, 410 U.S. 113 (1973).

A contraparte, y ya más en lo relacionado con precedentes que consistan en interpretaciones puramente estatutarias, se ha favorecido una modalidad más rígida y consistente en la aplicación de la doctrina de *stare decisis*. Lo anterior, debido a la posibilidad de que la Asamblea Legislativa pueda avalar o rechazar una interpretación de este Tribunal sobre determinado asunto: (1) mediante su anuencia, -- es decir, la inacción prolongada o adopción de nueva legislación o enmiendas a la existente que dejen inalterada la disposición que fue objeto de interpretación judicial --; o (2) a través de una enmienda a la ley para adoptar o descartar expresamente la interpretación judicial.

### iv.

Sentenciado lo anterior, -- y en lo que consideramos un escenario muy poco atendido por la jurisprudencia y la literatura, por cierto --, conviene evaluar entonces lo que

---

[8] J. M. Farinacci Fernós, *La doctrina del "stare decisis" en Puerto Rico*, 52 Rev. Jur. UIPR 67, 80-81 (2018).

debe suceder en aquellas instancias, como la de autos, en las que la interpretación estatutaria incide directamente en las pautas constitucionales. **Es decir, ¿qué modalidad de la doctrina de *stare decisis* se debería emplear en aquellos casos, -- como el presente --, en los que un precedente establece una interpretación estatutaria que interviene, limita o afecta garantías o normas constitucionales? ¿Se debería seguir la modalidad fuerte, bajo el pretexto de que, después de todo, se está interpretando un estatuto; o se debería recurrir a la modalidad flexible, debido a los efectos adversos de dicha interpretación sobre una garantía o norma de rango constitucional?**

Nuestra respuesta a dichas interrogantes es sencilla. En escenarios como los antes descritos, -- de conformidad con la normativa antes expuesta --, el proceder más sensato lo es el realizar un acercamiento flexible a la doctrina de *stare decisis*; toda vez que, al verse involucrados derechos constitucionales, es necesario poder corregir una determinación estatutaria errónea que afecte o limite tales garantías fundamentales.

## III.

Dicho ello, y toda vez que el precedente que una mayoría de mis compañeros y compañeras de estrado hoy reafirman en la causa de epígrafe consiste en una interpretación estatutaria que incide directamente en la prohibición constitucional de que el Estado tome propiedad privada para fines públicos sin una justa compensación, procede que evaluemos la controversia

de marras a la luz del marco de análisis que acabamos de exponer. Pasamos a así hacerlo.

A.

Como mencionamos anteriormente, el primero de los criterios de *González v. Merck, supra,* a evaluar en casos como éstos, es determinar si el precedente en cuestión está errado. Hoy, una mayoría del Tribunal invoca el precedente establecido en *Universal Ins. y otro v. E.L.A. y otros*, 211 DPR 455 (2023), en el que se resuelve que la doctrina de impedimento colateral por sentencia es inaplicable al proceso de confiscación civil en ausencia de un dictamen, emitido en otro proceso, que diga textualmente que el bien confiscado no fue utilizado en la comisión de un delito. Por los fundamentos que exponemos a continuación, -- los cuales ya hemos señalado en ocasiones anteriores --, colegimos que dicho precedente, en efecto, es errado. Nos explicamos.

Según el razonamiento de la *Opinión* mayoritaria, una determinación final y firme de no causa para arresto, sin más, no constituye una adjudicación expresa de que el vehículo confiscado no ha sido utilizado en actividad criminal alguna, como requiere la Ley Núm. 119-2011, también conocida como la *Ley uniforme de confiscaciones*, 34 LPRA 1724 *et seq.* (en adelante, "Ley de confiscaciones"). Mediante dicho dictamen, éstas y éstos emplean, de forma automática, la ficción jurídica en la que se sostiene la confiscación civil o *in rem*, a saber, la de culpar a la cosa misma por participar en la comisión de determinado delito. *Coop. Seg. Múlt. v. E.L.A.,*

180 DPR 655, 666 (2011); *Suárez v. E.L.A.*, 162 DPR 43, 52 (2004); *Del Toro Lugo v. E.L.A.* 136 DPR 973, 982 (1994). Tal proceder, como hemos reiterado, nos parece totalmente errado.

Lo anterior así, pues, la confiscación de un vehículo de motor por parte del Estado se invalida cuando no se logran presentar cargos criminales por aquellos hechos que motivaron el referido proceso confiscatorio en contra de la persona propietaria del bien. Véase, *CSM v. ELA*, 2025 TSPR 78, 216 DPR __ (Colón Pérez, expresiones disidentes); *Universal Insurance Comp. v. E.L.A.*, *supra*, págs. 488-490 (Colón Pérez, opinión disidente); *Coop. Seg. Múlt. et als. v. E.L.A. et als.*, 209 DPR 796, 826-848 (2022) (Colón Pérez, opinión disidente). Lo anterior, puesto que, en tales instancias, **no hay vínculo entre el vehículo confiscado y el delito imputado**. *Universal Insurance Comp. v. E.L.A.*, *supra*, págs. 489-490 (Colón Pérez, opinión disidente); *Coop. Seg. Múlt. et als. v. E.L.A. et als.*, *supra*, pág. 846 (Colón Pérez, opinión disidente).

En ese sentido, insistimos, una vez más, que un **vehículo de motor no puede ser autor o coautor de un delito**. En otras palabras, -- independientemente de las distintas razones por las cuales pueda culminar el proceso penal sin un dictamen de culpabilidad --, para que proceda la confiscación civil de un bien de este tipo, es necesario demostrar, entre otras cosas, que determinada persona, en efecto, cometió un delito. En ausencia de ello, el vehículo de motor no puede confiscarse.

Y es que, pretender distinguir entre el acto ilegal que da pie a la confiscación y el bien confiscado no es más que

una ficción jurídica carente de sentido lógico, práctico y legal. Ello, pues resulta llanamente imposible desvincular el acto humano tipificado como delito, -- en este caso, acelerar un vehículo de motor para competir con otro en una vía pública --, del posible involucramiento de la cosa confiscada en una actividad ilegal. Es decir, **si un tribunal concluye, mediante una sentencia final y firme, que el Estado no satisfizo ni tan siquiera el estándar probatorio para hallar causa probable para arresto contra quien manejaba el vehículo, entonces no existe justificación para aplicar la presunción de corrección de una confiscación, pues el bien no estaría vinculado con delito alguno.** De este modo, y en lo relacionado con el primero de los tres (3) criterios desarrollados en *González v. Merck, supra,* resulta forzoso concluir que el precedente en el que hoy descansa una mayoría de este Tribunal es erróneo. Ahora bien, conforme al marco analítico expuesto, ello, por sí sólo, no es suficiente para concluir que el precedente aquí bajo estudio merece ser revocado, pues antes tenemos que enfrentarnos a los otros dos (2) factores de *González v. Merck, supra*, a saber, el efecto del precedente en el ordenamiento y la cantidad de personas que confían en él.

### B.

Sobre esto último, basta con señalar que concluir que un dictamen final y firme mediante el cual se establezca que no existe causa probable para arresto constituye una adjudicación expresa de que el vehículo confiscado no ha sido utilizado para una actividad delictiva, -- de ninguna manera --, afecta

adversamente el resto del ordenamiento. Ello, toda vez que, con tal conclusión, no se añaden, alteran o eliminan requisitos procesales o sustantivos de clase alguna. Simplemente estaríamos aclarando que tales dictámenes satisfacen lo que ya requiere la ley. Por lo tanto, el segundo criterio de los desarrollados en *González v. Merck, supra*, en esta ocasión, no impide apartarnos de nuestros precedentes.

Asimismo, y en lo relacionado con el presente litigio, nos parece que el tercer criterio de los desarrollados en *González v. Merck, supra*, tampoco es óbice para la revocación del precedente que hoy se utiliza para disponer de los asuntos ante nuestra consideración. En casos como el de autos, quien único podría decir que confía en el precedente en cuestión, al extremo de verse potencialmente afectado adversamente por su revocación, es el Estado. Esto último, debido a que, a nuestro juicio, ni la ciudadanía ni las compañías aseguradoras confían en el precedente aquí reafirmado por una mayoría de este Tribunal como una fuente de protección de sus derechos y relaciones jurídicas, si no, más bien, como una limitación irracional a sus garantías constitucionales. Siendo ello así, no nos parece que haya un grupo significativo de personas que se afectaría por la revocación del precedente.

## IV.

En fin, a partir de las razones antes expuestas, nos parece claro que, en lo relacionado con la cusa de epígrafe, están presentes todos los elementos necesarios para poder apartarnos de los precedentes que, sobre el tema aquí bajo

estudio, se habían desarrollado. Por tal razón, respetuosamente, disentimos del curso de acción seguido en el día de hoy por una mayoría de este Tribunal.


Ángel Colón Pérez
Juez Asociado