ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| MILTA INÉS DÁVILA Y COOPERATIVA DE AHORRO Y CRÉDITO PADRE SALVADOR RUFFOLO<br><br>Apelados<br><br>V.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Apelante | TA2026AP00168 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: SJ2024CV00053<br><br>Sobre: Impugnación de Confiscaciones (Ley Núm. 119-2011) |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de abril de 2026.

Comparece ante nos el Estado Libre Asociado de Puerto Rico (ELA) por conducto de la Oficina del Procurador General (en adelante, OPG o parte apelante) y solicita que revisemos una *Sentencia* emitida el 27 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, TPI).[1] En la misma, dicho foro declaró Ha Lugar Moción de Sentencia Sumaria presentada por la Cooperativa de Ahorro y Crédito Padre Salvador Ruffolo (en adelante, Cooperativa o parte apelada).

Por los fundamentos que expresamos a continuación, revocamos el dictamen apelado y ordenamos la continuación de los procedimientos ante el Foro Primario.

**I.**

El 12 de marzo de 2024, la Policía de Puerto Rico ocupó un vehículo de motor marca Toyota, modelo RAV-4, del año 2021, tablilla JOC-479, registrado a nombre de la Sra. Milta Inés Colón Dávila (en

---

[1] Entrada Núm. 83 del caso SI2024CV00053 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 31 de octubre de 2025.

adelante, señora Colón Dávila).[2] Ello, luego de que dicho vehículo fuera alegadamente utilizado el 7 de marzo de 2024 por el Sr. Bryan José Rivera Montañez (en adelante, señor Rivera Montañez) en la comisión de infracciones al Art. 93 del Código Penal de Puerto Rico, Ley Núm. 146-2012, según enmendada, 33 LPRA sec. 5142; y por violaciones de los Arts. 6.09, 6.14 y 6.22 de la *Ley de Armas de Puerto Rico*, según enmendada, Ley Núm. 168-2019, 25 LPRA secs. 466h, 466m y 466u. *Íd.*

Como consecuencia de lo anterior, se emitió la correspondiente *Orden de Confiscación*, siendo tasado el vehículo el 23 de abril de 2024 en $25,000.00.[3] Así las cosas, el 24 de abril de 2024, la Junta de Confiscaciones del Departamento de Justicia envió unas cartas a la señora Colón Dávila, al señor Rivera Montañez y, por equivocación, a la Cooperativa de Ahorro y Crédito Padre McDonald.[4] Mientras que el 14 de mayo de 2024, se envió la misiva a la parte apelada, entidad en cuyo beneficio consta inscrito un gravamen ante el Departamento de Transportación y Obras Públicas como acreedor que financió el contrato de venta condicionada mediante el cual la señora Colón Dávila adquirió el vehículo objeto de la confiscación impugnada.[5] Además, manifestó que la ocupación del vehículo ocurrió el 12 de marzo de 2024, y que obedeció a que el 7 de marzo de 2024, se utilizó en la violación de las disposiciones antes mencionadas. Explicó que el 12 de abril de 2024, la Policía de Puerto Rico expidió *la Certificación de Inspección de Vehículos de Motor y Equipo Pesado*. A su vez, comunicó que la confiscación podía impugnarse dentro de los treinta (30) días desde que se recibió la notificación. *Íd.*

Así las cosas, el 5 de mayo de 2024, la señora Colón Dávila, presentó una *Demanda* de impugnación de confiscación, al amparo

---

[2] *Íd.*, Entrada Núm. 1 en SUMAC.
[3] *Íd.*, Entrada Núm. 74 en SUMAC.
[4] *Íd.*, Entrada Núm. 79 en SUMAC.
[5] *Íd.*, Entrada Núm. 26 en SUMAC.

de la *Ley Uniforme de Confiscaciones de 2011*, según enmendada, Ley Núm. 119-2011, 34 LPRA sec. 1724 (en adelante, Ley de Confiscaciones).[6]

El 13 de junio de 2024, la parte apelante presentó su *Contestación a Demanda.*[7] En lo pertinente al caso de autos, respondió que la ocupación y posterior confiscación del referido vehículo obedeció a que se utilizó en la comisión de delitos en violación al Art. 93 del Código Penal de Puerto Rico, *supra.* sec. 5142; y por violaciones de los Arts. 6.09, 6.14 y 6.22 de la Ley de Armas de Puerto Rico, *supra,* secs. 466h, 466m y 466u. También, señaló que la legitimación activa de la señora Colón Dávila estaba sujeta a que se presentara la evidencia correspondiente en una vista con el propósito de establecer la referida legitimación. Por otra parte, arguyó que la legalidad y corrección de la confiscación se presumía de manera independiente al progreso o procedencia de cualquier otro caso penal, administrativo u otro procedimiento relacionado a los mismos hechos, y que la señora Colón Dávila tenía el peso de la prueba para derrotar la legalidad de la confiscación. Afirmó que la notificación de la confiscación se emitió conforme dispone el Art. 13 de la *Ley de Confiscaciones, supra,* sec. 1724j. *Íd.*

Así las cosas, y luego de traer a la Cooperativa como tercero demandado, el 16 de julio de 2024, la señora Colón Dávila presentó una *Moción Urgente Consignando Fianza Documental y Solicitud de Remedio Interlocutorio.*[8] Esta fue acompañada de la respectiva fianza y solicitó la devolución del vehículo a la Cooperativa, y que se le ordenara a la Junta de Confiscaciones no disponer del vehículo. *Íd.* El próximo día, el ELA presentó su réplica, en la que se opuso a la fianza y solicitó la desestimación del recurso.[9] Ello a base de que la

---

[6] *Íd.,* Entrada Núm. 1 en SUMAC.
[7] *Íd.,* Entrada Núm. 9 en SUMAC.
[8] *Íd.,* Entrada Núm. 26 en SUMAC.
[9] *Íd.,* Entrada Núm. 27 en SUMAC.

fianza se presentó fuera del término establecido en la *Ley de Confiscaciones, supra. Íd.* Tal solicitud fue declarada *No Ha Lugar* el 27 de septiembre de 2024 y se ordenó la devolución del vehículo a la apelada.[10]

Tras diversos incidentes procesales que incluyeron el reconocimiento de legitimación activa a la parte apelada y la enmienda a la *Demanda* para que esta figurara como único demandante, el 18 de junio de 2025, la Cooperativa presentó su *Moción Solicitando Se Dicte Sentencia Sumaria Por Notificación de Confiscación Tardía.*[11] En esta, solicitó se declarara Ha Lugar la *Demanda* y nula la confiscación, por haberse notificado posterior a transcurrir el término jurisdiccional establecido en el Artículo 13 de la *Ley de Confiscaciones, supra,* sec. 1724j. Por ello, indicó que los únicos asuntos litigiosos en este caso eran si la confiscación se notificó una vez venció el término jurisdiccional y si el vehículo se ocupó y retuvo como parte relevante y esencial de una investigación en curso o como evidencia física del Ministerio Público.

El 24 de julio de 2025, la parte apelante presentó su *Moción en Oposición a Solicitud de Sentencia Sumaria.*[12] En resumen, planteó que la notificación de la confiscación se realizó oportunamente y conforme a derecho. Al respecto, arguyó que, toda vez que el automóvil se incautó para realizar una investigación de índole criminal, disponía de un término excepcional de noventa (90) días para investigar y expedir una *Orden de Confiscación.* Precisó que, a partir de tal fecha, comenzó a transcurrir el término de treinta (30) días para notificar la confiscación. De esta manera, señaló que la investigación y la *Orden de Confiscación* se gestionaron dentro de los treinta y seis (36) días desde que se ocupó el vehículo y, a los

---

[10] *Íd.,* Entrada Núm. 37 en SUMAC.
[11] *Íd.,* Entrada Núm. 74 en SUMAC. Notificada el 19 de junio de 2025.
[12] *Íd.,* Entrada Núm. 79 en SUMAC.

veintisiete (27) días, se notificó la confiscación a la Cooperativa. Seguido, puntualizó que el término jurisdiccional general de treinta (30) días a partir de la ocupación no era aplicable a este caso, sino el término excepcional cuando existía una investigación de índole criminal.

Tras culminar el descubrimiento de prueba y las partes reiterar sus solicitudes, el asunto se dio por sometido. A esos efectos, el 27 de octubre de 2025 el TPI emitió la *Sentencia* apelada, en la que declaró Ha Lugar la moción de sentencia sumaria y la *Demanda* presentada por la Cooperativa.[13] El Foro Primario formuló las siguientes determinaciones de hechos:

1. El vehículo objeto del presente caso marca Toyota, modelo [RAV-4] tablilla JOC-479 del año 2021, número de serie JTMH1RFV3MD066726; está registrado en el DTOP a nombre de la Sra. Milta Inés Colón Dávila.
2. El vehículo tiene un primer gravamen de venta condicional anotado a favor de la Cooperativa Ahorro y Crédito Padre Salvador Ruffolo.
3. Mediante la RESOLUCIÓN emitida el 27 de septiembre de 2024 se le reconoció a la Cooperativa de Ahorro y Crédito Padre Salvador Ruffolo legitimación activa en el presente caso como acreedor financiero.
4. El 12 de marzo de 2024 el Estado Libre Asociado ocupó el vehículo marca Toyota, modelo RAV-4, año 2021, con número de tablilla JOC-479, por alegadamente haber sido utilizado en violación al Artículo 93 del Código Penal de Puerto Rico y a los Artículos 6.09, 6.14 y 6.22 de la Ley de Armas de Puerto Rico.
5. En el Inventario de Vehículo con fecha de 12 de marzo de 2024, en el encasillado correspondiente al relato, no se anotó que el vehículo fue ocupado para investigación.
6. El 12 de marzo de 2024 se presentaron múltiples denuncias contra Bryan José Rivera Montañez por violación al Artículo 93 del Código Penal de Puerto Rico, y los Artículos 6.09, 6.14 y 6.22 de la Ley de Armas de Puerto Rico, en los cuales se determinó causa probable en ausencia, ordenándose el arresto, por alegados hechos ocurridos en el Municipio de Santa Isabel el 7 de marzo de 2024 y por el cual el vehículo marca Toyota, modelo [RAV-4], con número de tablilla JOC-479 fue ocupado y confiscado.
7. **La Orden de Confiscación se emitió el 17 de abril de 2024. De esta se desprende que se ordenó la confiscación "por considerarse que es producto, ha sido utilizado o está relacionado con la comisión de los hechos delictivos que se hacen constar en el epígrafe de esta Orden".** El valor de tasación del vehículo confiscado adjudicado por la Junta de Confiscaciones es de $25,000.00. No surge imputación alguna de que el vehículo fue incautado por motivos investigativos.

---

[13] *Íd.,* Entrada Núm. 83 en SUMAC. Notificada el 31 de octubre de 2025.

8. La notificación de confiscación a la dueña registral la Sra. Milta Inés Colón Dávila fue depositada en el correo el 24 de abril de 2024.

9. La notificación de confiscación a ParroCoop fue depositada en el correo el 14 de mayo de 2024, siendo recibida el 18 de mayo de 2024.

10. **En la notificación de la confiscación se alega que la ocupación obedeció a que el 7 de marzo de 2024 se utilizó en violación al Art. 93 del Código Penal y los Arts. 6.09, 6.14 y 6.22 de la Ley de Armas, en Santa Isabel, Puerto Rico.**

11. **De la notificación de la confiscación se desprende que la Certificación de Inspección de Vehículos de Motor y Equipo Pesado preparada por el Negociado de la Policía de Puerto Rico fue expedida el 12 de abril de 2024. No surge imputación de violaciones relacionadas con la Ley Núm. 8 de 5 de agosto de 1987, Ley para la Protección de la Propiedad Vehicular, 9 LPRA sec. 3201 et seq.**

12. Al 16 de julio de 2025 el acusado, Bryan José Rivera Montañez, se encontraba pendiente de extradición desde el Estado de Ohio, en Estados Unidos.

13. La parte demandada no acreditó [cuál] fue la investigación realizada desde el momento de la ocupación del vehículo de motor el 12 de marzo de 2024 hasta la fecha en que el emitió la Orden de Confiscación, el 17 de abril de 2024.

14. El mismo día de la ocupación, el 12 de marzo de 2024, se celebró la Vista de Determinación de Causa (Regla 6) en ausencia. La parte demandada no acreditó [cuál] fue la investigación realizada, a pesar de haberse presentado e iniciado la acción criminal con una determinación de causa en ausencia por violación al Artículo 93 del Código Penal de Puerto Rico, y los Artículos 6.09, 6.14 y 6.22 de la Ley de Armas de Puerto Rico. (Énfasis suplido).

El Foro *a quo* dispuso que, bajo la norma general, la notificación de confiscación emitida el 17 de abril de 2024 ocurrió fuera del término jurisdiccional. Pues, estableció que, desde el 12 de marzo de 2024, fecha de ocupación del automóvil, hasta el 17 de abril de 2024 que se emitió la *Orden de Confiscación*, nunca informó oportunamente a los demandantes sobre que el trámite confiscatorio se podía extender para fines investigativos, a tenor con la última modalidad del Artículo 13 de la *Ley de Confiscaciones*, *supra*, sec. 1724j. A su vez, indicó que en la *Orden de Confiscación* solamente se hizo referencia a la razón por la cual se incautó el vehículo. Sin embargo, no se indicó sobre la necesidad de retener la propiedad para fines asociados a la investigación o para efectos investigativos.

Asimismo, el TPI señaló que en la carta de *Notificación de Confiscación* no se hizo mención alguna respecto a que el vehículo fue ocupado y se retuvo para investigación y evidencia física por los

hechos relacionados al caso criminal. Así como tampoco surgió del documento de *Inventario de Vehículo* que el mismo fue ocupado para investigación o por estar involucrado en la comisión de un delito. Igualmente, indicó que el ELA no presentó *Certificado de Inspección del Vehículo de Motor y Equipo Pesado* preparado por el Negociado de Investigaciones de Vehículos Hurtados donde surgía la inspección realizada al vehículo de motor, o que el vehículo tuviera condición alguna que infringiera la *Ley para la Protección de la Propiedad Vehicular, supra,* y que ameritara investigación ulterior. Resaltó que la *Orden de Confiscación* emitida el 17 de abril de 2024, en la cual se autorizó la confiscación de la unidad ocupada, no se detalló la necesidad de retener el vehículo para investigación alguna.

Por otra parte, la *Sentencia* apelada hizo referencia a que el escrito de *Oposición a la Sentencia Sumaria* incluyó como anejo para sustentar su oposición el documento intitulado *Entrega Tardía de Vehículo Ocupado en Caso Asesinato.* No obstante, enfatizó que de dicho documento no surgió evidencia acerca de en qué consistió la investigación, las fechas en que se llevó a cabo, ni la necesidad de retener la propiedad para fines asociados a esa investigación.

El TPI, puntualizó que ante una *Moción de Sentencia Sumaria,* la parte opositora tenía el peso de presentar evidencia sustancial que apoyara los hechos materiales que alegó que estaban en controversia. Igualmente, indicó que correspondía al ELA establecer tanto la naturaleza de la investigación, como la necesidad de retener el vehículo para fines investigativos.

Por lo anterior, el Foro Primario estableció que, al transcurrir más de treinta (30) días desde la fecha de la ocupación del automóvil sin notificar la confiscación, procedía declarar su nulidad. Manifestó que el ELA no justificó su tardanza ni explicó la investigación efectuada y su nexo con el vehículo, tal como el Tribunal Supremo lo requirió en el caso *Reliable Financial v. ELA,* 197 DPR 289 (2017).

Inconforme, el 17 de noviembre de 2025, el ELA presentó una *Moción en Solicitud de Reconsideración*, en la que reiteró que en este caso era aplicable el término de noventa (90) días para culminar una investigación relacionada con una acción penal y gestionar la *Orden de Confiscación*, además del posterior término de treinta (30) días para notificar la confiscación.[14] Expresó que la prueba reflejó que el vehículo ocupado se hallaba bajo investigación en el Instituto de Ciencias Forenses y en la División de Vehículos Hurtados. Argumentó que, dada la naturaleza de la investigación de un asesinato en primer grado, ello no permitía que se divulgara de inmediato la documentación del sumario fiscal. Adujo que proveer información confidencial de una investigación cuando existía un asunto criminal pendiente equivalía a adelantar un descubrimiento de prueba prematuro en la esfera criminal, lo cual estaba protegido en el Art. 15 de la *Ley Uniforme de Confiscaciones*, *supra*, sec. 1724l. A base de lo cual, la parte apelante sostuvo que lo que correspondía al ELA era dejar saber que hubo una investigación de índole criminal o penal y al TPI determinar si hubo o no una investigación. Precisó que solicitar los hallazgos de dicha investigación, cuando se encontraban pendientes asuntos criminales relacionados a la investigación era improcedente en derecho.

Puntualizó que permitir tal divulgación abriría una puerta muy peligrosa al permitir el acceso a información confidencial del sumario fiscal que no es descubrible en etapa temprana del Procedimiento Criminal. Añadió que en vista de lo anterior no procedía la sentencia sumaria, debido a la existencia de controversia real. Por consiguiente, apuntaló que procedía la celebración de una vista evidenciaria confidencial en su fondo, en la cual se pueda examinar la evidencia pertinente, sin que se menoscabe el proceso criminal aun en curso.

---

[14] *Íd.,* Entrada Núm. 84 en SUMAC.

Con fecha de 10 de diciembre de 2025, la Cooperativa suscribió una *Moción en Cumplimiento de Orden* y *Oposición a Moción de Reconsideración*, en la que reiteró que el ELA hizo la mención de una investigación, en términos vagos y generalizados, sin acreditar su relevancia con el vehículo confiscado ni su resultado.[15] Por tanto, sostuvo que la parte apelante se cruzó de brazos y descansó en meras alegaciones.

El 16 de diciembre de 2025, el TPI emitió una *Resolución* en la que declaró *No Ha Lugar* a la solicitud de reconsideración del ELA.[16]

En desacuerdo con el dictamen, el 17 de febrero de 2026, la OPG presentó el recurso de apelación que nos ocupa, en el que señaló que el Foro Primario incurrió en el siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER LA MOCIÓN DISPOSITIVA PRESENTADA POR LA PARTE APELADA, A PESAR DE QUE LA PRUEBA DOCUMENTAL DEMOSTRÓ QUE EL ESTADO NOTIFICÓ LA CONFISCACIÓN DEL VEHÍCULO CONFORME AL ARTÍCULO 13 DE LA LEY UNIFORME DE CONFISCACIONES, ANTE LA NECESIDAD DE RETENER EL VEHÍCULO DE MOTOR PARA UNA INVESTIGACIÓN PARALELA Y AL NO TOMAR EN CUENTA QUE, COMO MÍNIMO, EXISTE CONTROVERSIA DE HECHOS SOBRE SI EL VEHÍCULO FUE OCUPADO PARA FINES INVESTIGATIVOS EN CUMPLIMIENTO CON ESE ARTICULADO.

En esencia, el apelante destacó que cumplió cabalmente con la notificación de la confiscación al apelado, y que de esta surge que el vehículo fue ocupado por haber sido utilizado en violación al Art. 93 del Código Penal de Puerto Rico, *supra,* y por varias infracciones a la *Ley de Armas de Puerto Rico, supra.* Además, expresó que en el *Inventario de Vehículo* se indicó que el automóvil se ocupó para investigación. Asimismo, sostuvo que ello quedó evidenciado en la misiva *Entrega Tardía de Vehículo Ocupado en Caso Asesinato* que se emitió el 19 de abril de 2024, en cual surgió que el 12 de marzo de 2024, el vehículo en controversia fue ocupado como parte de la investigación de un asesinato relacionado con la Querella 2024-3-

---

[15] *Íd.,* Entrada Núm. 86 en SUMAC. Presentada el 12 de diciembre de 2025.
[16] *Íd.,* Entrada Núm. 87 en SUMAC. Notificada el 18 de diciembre de 2025.

069-000526 llevada a cabo por el Cuerpo de Investigaciones Criminales ("CIC").[17] Indicó, además, que el vehículo fue analizado por el Instituto de Ciencias Forenses. *Íd.* Ante ello, sostuvo que contaba con el término de noventa (90) días para concluir la pesquisa, ya que estaba realizando una investigación de naturaleza criminal que vinculaba el vehículo ocupado. Indicó que a los treinta y seis (36) días de la ocupación del vehículo se concluyó la investigación y se emitió la *Orden de Confiscación,* fecha a partir del cual se tardó veintisiete (27) días para notificar la confiscación, ello dentro del término de treinta (30) días dispuestos en la *Ley de Confiscaciones*, *supra.*

Por lo anterior, el apelante especificó que no procedía la nulidad de la confiscación. A su vez, subrayó que el TPI erró al disponer de este caso sumariamente, aun cuando la Cooperativa no demostró la inexistencia de una controversia de hechos sobre que el Estado omitió notificarle la confiscación dentro del término que proveía el Artículo 13 de la *Ley de Confiscaciones*, *supra*, sec.

Por su parte, el 20 de marzo de 2026, la apelada presentó su alegato ante este Foro, en el que planteó que la confiscación objeto de este recurso era nula al realizarse transcurridos más de treinta (30) días desde la confiscación inicial. Adujo que el ELA narró que estaba realizando una investigación que activaba la extensión del término de notificación, sin apoyarse con declaraciones juradas o prueba documental, tal como lo requería la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. A la vez, manifestó que el apelante no evidenció que era indispensable y relevante para la investigación la ocupación y retención del vehículo. Ante ello, arguyó que no era aplicable ninguna de las circunstancias que extienden el término jurisdiccional para la notificación de una confiscación.

---

[17] *Íd.,* Entrada Núm. 79 en SUMAC.

En atención al error señalado, procedemos a exponer la normativa jurídica aplicable a este recurso.

## II.

### A. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal que permite disponer un caso ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales que requieran ser dilucidadas en un juicio plenario. *Coop. Seguros Múltiples de PR v. ELA,* 2025 TSPR 78, 216 DPR ___ (2025); *Birriel Colón v. Econo y otro,* 213 DPR 80, 90 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). Un hecho material es aquel esencial y pertinente que pueda afectar el resultado de la reclamación según el derecho sustantivo. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Así, procede dictar sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, junto a cualquier otra evidencia, demuestran que no existe controversia real sustancial sobre los hechos esenciales. Regla 36.3(e) de Procedimiento Civil, *supra,* R. 36.3 (e); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales que entienda están en disputa mediante evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra,* págs. 336-337. Cuando la petición de sentencia sumaria está respaldada con declaraciones juradas u otra prueba, el oponente no puede descansar en meras alegaciones, sino que debe responder con igual grado de especificidad y detalle. Regla 36.3 (c) de Procedimiento Civil, *supra,* R. 36.3 (c); *Birriel Colón v. Econo y otro, supra; Ramos Pérez v. Univisión, supra,* pág. 215. Empero, la falta de prueba para refutar la

evidencia del promovente no implica la concesión automática de la sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra*, pág. 337.

El Tribunal Supremo estableció el estándar para este Foro apelativo revisar una sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra*. Primero, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar *de novo* una solicitud de sentencia sumaria, conforme con la Regla 36 de Procedimiento Civil, *supra*, R. 36. En tal ejercicio, solamente se puede considerar evidencia presentada al Foro *a quo*, y se debe examinar el expediente de la forma más favorable a la parte opositora. *Íd.*, pág. 116.

Segundo, corresponde verificar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos codificados por la Regla 36 de Procedimiento Civil, *supra*, R. 36 y discutidos en el caso *SLG Zapata- Rivera v. J.F. Montalvo, supra. Íd.*, pág. 119. Tercero, debe determinarse si en realidad existen hechos materiales en controversia. De ser así, es necesario distinguir entre los hechos controvertidos e incontrovertidos, según dispone la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Íd.* Cuarto, si no existen hechos materiales en controversia, procede evaluar si el TPI aplicó correctamente el derecho. *Íd.*

### B. Ley de Confiscaciones

A través de la confiscación se le confiere al Gobierno el título de aquellos bienes utilizados para fines ilícitos al amparo de cualquier estatuto que así lo autorice. 34 LPRA sec. 1724f. En otras palabras, la confiscación es el acto mediante el cual el Estado se adjudica bienes que han sido utilizados para la comisión de determinados delitos. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y* otros, 2026 TSPR 36, 218 DPR ___ (2026); CSM *v. ELA*, 2025 TSPR 78, 216 DPR __ (2025); Reliable *Financial v. ELA,* 197 DPR 289, 296 (2017); *Reliable v. Depto. de*

*Justicia y Otros*, 195 DPR 917, 924 (2016); véase también, *Doble Seis Sport TV v. Depto. Hacienda*, 190 DPR 763 (2014); *Rodríguez Ramos v. ELA*, 174 DPR 194, 202 (2008). En nuestra jurisdicción, el proceso de confiscación está regulado por *la Ley de Confiscaciones, supra*, la cual establece en su Artículo 2, como política pública del Estado Libre Asociado de Puerto Rico "el crear mecanismos que faciliten y agilicen el proceso de confiscación de bienes muebles e inmuebles." 34 LPRA sec. 1724 nota.

El proceso de confiscación es civil y de naturaleza *in rem* y va dirigido contra la propia cosa, la cual, por ficción legal, se considera la ofensora, y no contra su dueño, poseedor o encargado, o la persona con interés. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y* otros, *supra*; CSM *v. ELA, supra; Reliable Financial v. ELA, supra*, págs. 296–297; *Doble Seis Sport v. Depto. Hacienda, supra*, pág. 787; véanse, además: Exposición de Motivos (párr. 6) y el Art. 8 de *la Ley de Confiscaciones, supra*, sec. 1724e. Ello así por virtud de la Ley de Confiscaciones. *Íd.* La referida Ley también reafirma que esta acción es independiente de cualquier acción de naturaleza penal, administrativa u otra naturaleza. 34 LPRA sec. 1724e.

A base de ello y por tratarse de un proceso *in rem,* se permite que este se lleve a cabo y concluya antes que se acuse, se declare culpable o se absuelva al acusado. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y* otros, *supra*; véase, además, Art. 8 de *la Ley de Confiscaciones, supra*, sec. 1724e. En ese sentido, el factor determinante a considerarse en los procesos de confiscación es si el bien se utilizó para cometer un delito independientemente del resultado de la acción criminal o de alguna naturaleza. *Íd.*

Ahora, en sus artículos 9 y 10, la *Ley de Confiscaciones, supra*, secs. 1724f y 1724g, dispone sobre los bienes sujetos a confiscación,

y detalla y aclara cuales bienes privados pueden ocuparse; quienes están autorizados para efectuar esta incautación y bajo qué circunstancias. El referido Artículo 9 establece que el Estado puede confiscar toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando estos se encuentren tipificados en el Código Penal de Puerto Rico y en diversos estatutos como, por ejemplo, la ley de sustancias controladas, de armas y explosivos, bebidas alcohólicas, etc. 34 LPRA secc. 1724f. Véase, también, *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y* otros, *supra*; CSM *v. ELA*, *supra.* Por su parte, el Artículo 10 en lo aquí pertinente dispone:

> La ocupación de la propiedad, sujeta a confiscación, se llevará a cabo por la agencia del orden público o el funcionario a cargo de la implantación de la Ley por sí o por conducto de sus delegados, policías o agentes del orden público, mediante orden de un magistrado o Tribunal competente o sin previa orden del Tribunal, en los siguientes casos:
>
> a) Cuando la ocupación se efectúa mientras se lleva a cabo un arresto;
>
> b) cuando la ocupación se efectúa en virtud de una sentencia judicial; o
>
> c) cuando la propiedad a ocuparse haya sido utilizada, resulte o sea el producto de la comisión de cualquiera de los delitos, leyes o estatutos confiscatorios que se expresan en el Artículo 9 de esta Ley.

Por lo tanto, un agente de la Policía de Puerto Rico está autorizado para ocupar propiedad sujeta a confiscación sin previa orden de un Tribunal cuando la ocupación se realiza mientas se lleva a cabo un arresto y cuando dicha propiedad haya sido utilizada al cometer un delito tipificado en el Código Penal de Puerto Rico, entre otros estatutos.

Lo anterior constituye una excepción al mandato constitucional que prohíbe tomar propiedad privada para fines públicos sin justa compensación. *CSM v. ELA, supra; Coop. Seg. Múlt. v. ELA*, 180 DPR 655 (2011).

Sobre la naturaleza civil del proceso confiscatorio, nuestro Tribunal Supremo ha expresado que, "[i]ndependientemente de la naturaleza civil de la confiscación[,] los estatutos confiscatorios deben interpretarse restrictivamente ya que, a pesar de tratarse de una acción de naturaleza civil, la forma en que es aplicada la sanción, el procedimiento que se utiliza y las defensas permitidas en éste, reflejan un propósito punitivo". *Reliable Financial v. ELA, supra*, pág. 297; *Doble Seis Sport v. Depto. Hacienda, supra*, pág. 789; *Santiago v. Spte. Policía de PR*, 151 DPR 511, 515 (2000).

En lo relacionado a los vehículos de motor, el Tribunal Supremo ha resuelto que la confiscación de un vehículo constituye una privación de la propiedad que obliga al Estado a cumplir con las garantías mínimas del debido proceso de ley. *Reliable v. Depto. Justicia y ELA, supra*, págs. 924–925; *Santiago v. Spte. Policía de PR, supra*, pág. 517. La notificación adecuada es uno de los preceptos del debido proceso de ley en su modalidad procesal. *Íd*. En torno a la confiscación, el vigente esquema normativo establece un procedimiento expedito con requisitos estrictos aplicables tanto al Estado, como a las partes con interés en los bienes confiscados. El Gobierno cuenta con un periodo de notificación limitado para poder validar su actuación. *Reliable Financial v. ELA, supra*, pág. 298.

En este contexto, el Art. 13 de la precitada Ley preceptúa la manera en que se debe notificar el hecho de la confiscación. Este dispone, en lo pertinente a la controversia de autos, lo siguiente:

> El Director Administrativo de la Junta notificará la confiscación y la tasación de la propiedad a las siguientes personas:
>
> . . . . . . . .
>
> c) **en los casos de vehículos de motor**, *se notificará,* además, *al dueño,* según consta en el Registro de Vehículos del Departamento de Transportación y Obras Públicas *y al acreedor condicional* que a la fecha aparezca en dicho Registro como acreedor hipotecario del bien.
>
> . . . .
>
> Toda confiscación se notificará por correo certificado dentro de un término jurisdiccional de treinta (30) días, siguientes a

la fecha de la ocupación física de los bienes. La notificación se hará a la dirección conocida del alegado dueño, encargado o persona con derecho o interés en la propiedad, según consta del expediente de la confiscación.

. . . .

**En el caso de vehículos de motor que sean ocupados en virtud de la** Ley Núm. 8 de 5 de agosto de 1987, según enmendada, conocida como **"Ley para la Protección de la Propiedad Vehicular"** . . . , *la notificación se hará dentro de los treinta (30) días siguientes a partir del término de treinta (30) días dispuestos para que los oficiales del orden público lleven a cabo una investigación sobre el bien ocupado.* . . . .

**En aquellos casos en los que se incaute y retenga cualquier propiedad para alguna investigación relacionada con cualquier acción penal, civil, administrativa** *o* **cuando el bien es indispensable para la investigación o como evidencia en el caso**, *el término para culminar la investigación y emitir la orden de confiscación no excederá de noventa (90) días. Los treinta (30) días para notificar la confiscación comenzarán a contarse una vez concluya dicha acción y se expida la correspondiente orden de confiscación.* 34 LPRA 1734j (citas omitidas).

Según expresado por el Tribunal Supremo, la descrita notificación tiene el propósito de salvaguardar los derechos constitucionales de una parte interesada en la propiedad confiscada, de manera que se le pueda brindar la oportunidad para que presente y pruebe todas las defensas válidas pertinentes a su reclamo. *Reliable v. Depto. Justicia y ELA, supra,* pág. 925; véase también, *López v. Secretaria,* 162 DPR 345, 352 (2004).

Como norma general, se debe cursar la notificación dentro de los treinta (30) días siguientes a la ocupación de la propiedad. *Reliable Financial v. ELA, supra*, pág. 299. Sin embargo, tal y como se indicó, la Ley dispone otros dos términos también jurisdiccionales.

En lo pertinente a la controversia de autos, el referido Artículo 13 establece un periodo de notificación especial que aplica a situaciones muy particulares respecto a las cuales el legislador entendió se justifica la retención de la propiedad por tiempo adicional debido a su conexión con otros procesos. A saber, se autoriza esta dilación cuando la propiedad se incauta y retiene (1) *para propósitos investigativos relacionados a un caso civil, criminal o administrativo*; (2) *cuando la propiedad sirve como evidencia física* en un caso y (3)

*cuando la propiedad incautada resulte "indispensable para la investigación".* En estos casos, se establece un término máximo de noventa días para culminar una investigación relacionada a la propiedad incautada y expedir la orden de confiscación correspondiente.

Al comentar sobre la excepción de que "se incaute y retenga cualquier propiedad para alguna investigación relacionada con cualquier acción", el Tribunal Supremo ha expresado que:

> *Ambas condiciones, es decir, la incautación, así como la retención para fines investigativos, tienen que darse conjuntamente.* En este sentido, para fines de esta disposición, no es menos importante determinar la justificación inicial para intervenir con la propiedad.
>
> Por lo tanto, para el Estado poder justificar la retención de propiedad confiscada a base del último supuesto del Art. 13 de la Ley Núm. 119-2011, . . . , es menester determinar si esa propiedad fue incautada y retenida con el propósito de asistir en alguna investigación concerniente a un caso. *Reliable Financial v. ELA, supra*, (Énfasis nuestro).

El Tribunal Supremo ha elaborado cómo se determina si la propiedad se incautó y retuvo para asistir en una investigación relacionada al caso. En particular, se deben cumplir dos requisitos: "que contemporáneamente o cercano a la incautación exista o se inicie algún tipo de investigación de naturaleza civil, penal o administrativa" y que esa investigación esté vinculada a la razón para ocupar la propiedad incautada. *Íd.* En otras palabras, que el motivo inicial para intervenir y retener la propiedad sea relevante a la pesquisa. *Íd.*, pág. 302.

En *Reliable v. ELA, supra*, el Tribunal Supremo estableció que el Gobierno "únicamente podrá aprovecharse del plazo adicional si cumple con cada una de las exigencias enumeradas en el último postulado del Art. 13 de [la Ley de Confiscaciones], . . ., que específicamente limitan este supuesto a investigaciones vinculadas a la incautación original". *Íd.*, pág. 303.

Con respecto al peso de la prueba, el Tribunal Supremo ha prescrito que:

> Con el propósito de garantizar que la facultad para incautar propiedad privada se ajuste a lo dispuesto en la normativa provista en el Art. 13 de la Ley Núm. 119-2011, supra, disponemos hoy que **la mejor práctica es que los motivos investigativos para retener la propiedad en estos casos se revelen a los dueños y a las personas con interés lo más cercano posible a la incautación**. . . *Íd.*, pág. 305 (Énfasis nuestro).
> Luego:
>
> [**C**]**orresponde a la parte que impugna una notificación por tardía, refutar** <u>las razones de índole investigativa aducidas por el Estado para amparar su retraso</u>. Así pues, según sea el caso, el dueño o la parte con interés en la propiedad deberá probar, ya sea que no se dio tal investigación o que, de ésta haberse realizado, ese trámite no guardó relación con la incautación.
>
> Ahora bien, **en ausencia de las comunicaciones mencionadas**, una vez impugnada una notificación por tardía, **si el Estado interesa valerse del periodo de tiempo adicional consignado en la última modalidad del Art. 13** de la Ley Núm. 119-2011, supra, **por alegada ocupación para fines investigativos**, **le corresponde el peso de probar, mediante prueba fehaciente, la conexión entre el motivo para la ocupación de la propiedad retenida y la investigación correspondiente**. *Íd.*, pág. 306.

### III.

Como cuestión de umbral, estamos en la misma posición que el Foro Primario para revisar *de novo* la solicitud de sentencia sumaria, así como su oposición. Al no encontrar incumplimiento craso ni controversias reales y sustanciales en término de cumplimiento con los requisitos formales dispuestos en la Regla 36 de Procedimiento Civil, *supra*, R. 36 ni de hechos materiales, procederemos a revisar si el TPI aplicó correctamente el derecho.

En tal ejercicio, nos corresponde determinar si el TPI erró al conceder sumariamente la *Demanda* presentada por la parte apelada y la nulidad de la confiscación del vehículo Toyota RAV-4 del año 2021, al concluir que la notificación de confiscación se cursó fuera del término jurisdiccional dispuesto en el Artículo 13 de la *Ley de Confiscaciones*, *supra*, sec. 1724j. El Foro *a quo* entendió que el ELA debía notificar la confiscación dentro del término general de treinta

(30) días contados a partir del 12 de marzo de 2024, cuando el vehículo se ocupó. Concluyó que al haberse emitido la notificación el 25 de abril de 2024, la misma se cursó fuera del término jurisdiccional y, por tanto, la confiscación era nula.

No obstante, adelantamos que, tras realizar una revisión exhaustiva del expediente, en consideración con la normativa jurídica concerniente a los hechos de este caso, resolvemos que el Foro *a quo* se equivocó en la aplicación de la excepción dispuesta en el Artículo 13 de la *Ley de Confiscaciones, supra*, sec. 1724j.

El vehículo objeto del pleito se ocupó el 12 de marzo de 2024 como parte de una investigación criminal iniciada a raíz de unos hechos ocurridos el 7 de marzo de 2024 en el Barrio Paso Seco Calle B del municipio de Santa Isabel. En su consecuencia, se presentaron denuncias en ausencia contra el señor Rivera Montañez el 12 de marzo de 2024, violación al Artículo 93 del Código Penal de Puerto Rico, *supra*, y por infracciones a la Ley de Armas, *supra*, secs. 466h, 466m y 466u. Estos datos incontrovertidos establecen que, al momento de la ocupación, existía una investigación penal activa y vinculada al vehículo ocupado. Circunstancia que activó el término excepcional que reconoce el Artículo 13 de la *Ley de Confiscaciones, supra*, sec. 1724j, referente a la incautación de una propiedad para una investigación por una acción penal, civil o administrativa o cuando el bien es indispensable para la investigación o evidencia de un caso.

Es decir, el ELA disponía hasta noventa (90) días a partir de la ocupación para culminar la investigación y emitir la *Orden de Confiscación*. A partir de tal acción, tenía treinta (30) días para notificar la confiscación al dueño registral de la propiedad y a las partes con interés.

El expediente demostró que el ELA actuó dentro del término establecido por la *Ley de Confiscaciones, supra,* para notificar la

confiscación. En concreto, tras la ocupación del automóvil el 12 de marzo de 2024, el apelante culminó la investigación relacionada a los hechos delictivos y expidió la *Orden de Confiscación* el 17 de abril de 2024, es decir, a los treinta y seis (36) días de la ocupación, dentro del término de noventa (90) días que tenía para ello. Asimismo, la notificación de la confiscación a la dueña registral se cursó el 25 de abril de 2024, esto es, a los ocho (8) días desde que se emitió la *Orden de Confiscación*. Mientras que la notificación de confiscación al acreedor, la Cooperativa, se cursó el 14 de mayo de 2024, esto es veintisiete (27) días luego de emitida dicha orden. Por lo que ambas notificaciones se cursaron dentro del término de treinta (30) días dispuesto por ley.

Por tanto, el ELA cumplió con ambos términos jurisdiccionales**:** (1) culminó la investigación y emitió la *Orden de Confiscación* dentro del término de noventa (90) días, y (2) notificó la confiscación dentro del término de treinta (30) días a partir de esa orden.

De otra parte, el TPI incurrió en error al concluir que el ELA no probó adecuadamente la conexión entre la ocupación y la investigación. Cabe destacar que, si bien en *Reliable Financial v. ELA*, *supra*, se indicó que *la mejor práctica* es revelar a los dueños y personas con interés los motivos investigativos para retener la propiedad lo más cercano posible a la incautación y que el Estado podía consignar fehacientemente en la orden de confiscación los fines investigativos que provocaron la retención, tal recomendación no constituyó un requisito de cumplimiento obligatorio. El propio Tribunal Supremo estableció que, en ausencia de dicha mejor práctica, una vez se impugnara la notificación y el Estado interesara valerse del período de noventa (90) días por ocupación para fines investigativos, le correspondía el peso de probar, mediante prueba fehaciente, la conexión entre el motivo para la ocupación de la propiedad y la investigación correspondiente.

En este caso, el Estado cumplió con dicha carga. El expediente contenía múltiples referencias que demostraron que desde el momento de la ocupación se desarrollaba una investigación de índole criminal vinculada con el uso del vehículo en la comisión de un delito. En específico, la *Carta de Notificación* indica que el vehículo fue ocupado por haber sido utilizado el 7 de marzo de 2024 en violación al Artículo 93 del Código Penal de Puerto Rico, *supra,* y por infracciones a la *Ley de Armas de Puerto Rico, supra,* secs. 466h, 466m y 466u. Además, la *Carta de Entrega Tardía de Vehículo* indica que el mismo no fue tan solo certificado por la División de Vehículos Hurtados, sino que también fue trabajado por el Instituto de Ciencias Forenses. Lo cual resultó contrario a las aseveraciones de la parte apelada, quien indicó que el OPG no logró establecer "la relevancia de tener que retener el vehículo confiscado para adelantar la investigación en curso, [qué] pruebas[,] si algunas[,] se le practicaron al vehículo o tan si quiera si en efecto el mismo fue referido o atendido por personal de Ciencias Forense[s]".

Asimismo, la Cooperativa señaló que no se demostró la necesidad de la ocupación del vehículo y el desarrollo de la investigación, pues el mismo día se celebró la vista de causa para arresto contra el señor Rivera Montañez y se ocupó el vehículo en controversia. Respecto a ello, es pertinente recalcar que los procesos investigativos no culminan con la celebración de una vista de causa para arresto. Por lo cual, la celebración de la vista no impedía que se ocupara el vehículo como parte del proceso investigativo, que dio inicio por los hechos imputados en la vista de causa para arresto.

Por otra parte, resulta meritorio destacar que proveer información confidencial de una investigación cuando existía un asunto criminal pendiente, podría implicar adelantar un descubrimiento de prueba de manera indirecta, lo cual podía resultar en un efecto adverso al proceso criminal. A base de lo cual la parte

apelante indicó que lo relacionado a los pormenores de la investigación en curso formaba parte del sumario fiscal y que no tendría acceso a ellos hasta tanto culminara el proceso criminal. Por lo cual, expresó tener la disponibilidad de los agentes para que pudiesen responder las interrogantes sobre la ocupación del vehículo y el proceso investigativo en una vista.

Por tanto, la prueba presentada mostró que ante la interrogante de si la ocupación del vehículo responde y se relacionaba a una investigación criminal, lo procedente era la celebración de una vista. Ello, por haber controversia de hechos materiales sobre a la existencia o alcance de la investigación y su relación con el vehículo, por lo que el caso no debió ser resuelto por la vía sumaria.

Por lo anterior, se revoca la *Sentencia* apelada y se ordena la celebración de una vista para dirimir la controversia sobre la relación entre la investigación criminal y la ocupación del vehículo.

**IV.**

Por los anteriores fundamentos, se revoca la *Sentencia* apelada. Se ordena la continuación de los procedimientos ante el TPI de forma consistente con lo aquí dispuesto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones